CENTRAL COAL & COKE CO. v. PENNY et al.

(Circuit Court of Appeals, Eighth Circuit. September 13, 1909.)

No. 3,001.

1. ADVERSE POSSESSION (§ 104*)—PRESUMPTION OF LAWFUL GRANT FROM TWENTY YEARS' EXCLUSIVE POSSESSION CONCLUSIVE, UNLESS LEGAL IMPOSSIBILITY.

A conclusive legal presumption of a grant of the character necessary to sustain title in the possessor arises from the exclusive, uninterrupted, adverse possession of real estate for 20 years, unless there is proof that such a title could not have been acquired by the possessor by any legal possibility.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 595–602; Dec. Dig. § 104.*]

2. ADVERSE POSSESSION (§ 104*)—FUTILE ATTEMPT BY ALLEGED GRANTOR TO CONVEY TO OTHERS NO EVIDENCE OF SUCH IMPOSSIBILITY.

The fact that the grantor, under whom the plaintiffs, who had been in exclusive possession for more than 20 years, claimed, had attempted in vain to convey the land to others, is no substantial proof that he could not, by any legal possibility, have conveyed the land in the possession of the plaintiffs to them.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 595–602; Dec. Dig. § 104.*]

3. ADVERSE POSSESSION (§ 31*)—NOTICE OF TITLE.

The notorious actual possession of real estate is notice to all of the title and of the rights of the possessors thereto.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 128–133; Dec. Dig. § 31.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. MINES AND MINERALS (§ 51*)—CONVERSION—MEASURE OF DAMAGES.**

One who, unintentionally and in the honest belief that he is lawfully exercising a right he has, enters upon the property of another and removes his ore, his coal, his timber, or any other valuable appurtenant to his land, is liable in damages for the value of the ore, timber, or other thing, in its original place, but for no more.

But one who willfully, intentionally, or with reckless disregard of the rights of another, takes his ore, timber, or other property, and appropriates it to his own use, must respond to the owner for the full value of the property at the time he converts it, without deduction for the labor bestowed or expenses incurred in removing and preparing it for market.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 141; Dec. Dig. § 51.*]

**5. MINES AND MINERALS (§ 51*)—PRESUMPTION OF INTENTION TO CONVERT.**

The wrongful taking of the ore or timber of another, in the absence of all other evidence, raises a presumption of fact that the trespasser took it intentionally, willfully, or in reckless disregard of the rights of the owner.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 51.*]

**6. MINES AND MINERALS (§ 51*)—CONVERSION.**

When the defendant bought the land around the two acres claimed by the plaintiffs, and while it was taking ore from beneath the surface of their land, they were, and had been for more than 20 years, in the notorious, uninterrupted, exclusive, adverse possession of their land, upon which they had maintained a church and a graveyard. The church and cemetery were within 200 feet of the shaft of the mine which the defendant bought. In the deed under which the defendant claimed was an exception of two acres upon which stands a church building, heretofore known as the Wollage Colored Church, and the plaintiffs' church was so known. The officers of the defendant testified that when they bought the property their attorney advised them that the exception was void, and that they had acquired good title to the plaintiffs' land and coal; that they believed that they owned the coal, when they took it from the land of the plaintiffs; that they inquired of their grantor what title the plaintiffs had, and were informed that they had none, but were there by permission; but that they did not inquire of the plaintiffs, or of any of the members of the church, concerning their claim of title.

*Held*, here was substantial evidence for the jury upon the question whether or not the defendant took the plaintiffs' coal willfully, or with a reckless disregard of their rights.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 51.*]

**7. WITNESSES (§ 318*)—EVIDENCE OF REPUTATION OF WITNESS INADMISSIBLE WHERE NOT ASSAILED.**

It is not competent for a party to an action to introduce in evidence the testimony of one of his witnesses to the effect that the reputation of another of his witnesses for integrity, veracity, ability, and standing is high, in the absence of evidence assailing his reputation.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1086; Dec. Dig. § 318.*

Evidence as to character or reputation in civil actions, see note to Morgan v. Barnhill, 55 C. C. A. 7.]

**8. DEPOSITIONS (§ 95*)—PARTS OF DEPOSITION.**

When a deposition has been properly taken, either party may introduce all or any competent or relevant part of it which is not clearly fragmentary and misleading, and the opposing party may put in evidence any other like part of it.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 276, 277; Dec. Dig. § 95.*]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Western District of Arkansas.

Action by William Penny and Ben Hubbard, trustees of Cherokee Chapel Church, against the Central Coal & Coke Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Ira D. Oglesby, for plaintiff in error.

T. B. Pryor and F. A. Youmans, for defendants in error.

Before SANBORN, Circuit Judge, and CARLAND and POLLOCK, District Judges.

SANBORN, Circuit Judge. The trustees of the Cherokee Chapel Church have recovered a judgment against the Central Coal & Coke Company for its conversion of coal which it removed from beneath two acres of land which have been occupied by the plaintiffs as a cemetery and the site for their church for more than 20 years. At the trial the Coal Company admitted that it had removed the coal out of this land; but it challenges the judgment against it on several grounds, the chief of which are that there was no substantial evidence of title by purchase in the trustees of the church, or of an intentional or willful taking and conversion of the coal of the plaintiffs by it.

Title by purchase, as distinguished from title by descent or otherwise, is deemed material by counsel in this case, because the statute of Arkansas provides that such a title conveyed to trustees in trust for the use of any religious society within that state for a meeting house or burying ground shall descend, with the improvements thereon, in perpetual succession in trust to such trustees as shall from time to time be elected or appointed by such society. Kirby's Dig. Ark. § 6851. At a former trial of this case the trustees proved that they and their predecessors had been in the exclusive, uninterrupted, adverse possession of the two acres of land in controversy for more than 30 years; that for that length of time they had maintained a fence around about an acre and a half of the land, and had used that portion of it as a burying ground; and that during this time they had maintained and used a meeting house on the adjoining part, which was not inclosed. The former pastor testified that the church was organized in 1868 or 1869; that in 1869 or 1870 the meeting house was constructed upon the land, and a fence was built around the burying ground, and that about the time the building was constructed there came into his possession a deed purporting to have been executed by one McCullom, and to have been acknowledged before a justice of the peace named Watts; that he took this deed to the register of deeds of the county, and asked him to record it; that the register subsequently returned it to him as recorded; that it was read to the congregation; that he delivered it to one of the trustees of the church, who died about 1880; that the house of this trustee was burned; and that the deed was lost. The Circuit Court held that this evidence was insufficient to establish title; but this court was of the opinion that it constituted substantial evidence that the trustees had title by purchase to this property under the rule announced by the Supreme Court in United States v. Chaves, 159 U. S. 452, 464, 16 Sup. Ct. 57, 40 L. Ed. 215, that "it is the general rule

of American law that a grant will be presumed upon proof of an adverse, exclusive, and uninterrupted possession for 20 years, and that such rule will be applied as a 'præsumptio juris et de jure,' wherever, by possibility, a right may be acquired in any manner known to the law (1 Greenleaf on Evidence [12th Ed.] § 17; Ricard v. Williams, 7 Wheat. 59, 109, 5 L. Ed. 398; Coolidge v. Learned, 8 Pick. [Mass.] 504)," and under its repeated quotation and approval (Ricard v. Williams, 7 Wheat. 59, 119, 5 L. Ed. 398; Fletcher v. Fuller, 120 U. S. 534, 548, 7 Sup. Ct. 667, 30 L. Ed. 759; United States v. Chavez, 175 U. S. 509, 523, 20 Sup. Ct. 159, 44 L. Ed. 255) of this declaration of the law by the Supreme Court of Tennessee in Williams v. Donell, 2 Head, 695, 697:

"It is not indispensable, in order to lay a proper foundation for the legal presumption of a grant, to establish the probability of the fact that in reality a grant ever issued. It will be a sufficient ground for the presumption to show that, by legal possibility, a grant might have issued. And, this appearing, it may be assumed, in the absence of circumstances repelling such conclusion, that all that might lawfully have been done to perfect the legal title was in fact done, and in the form prescribed by law." Penny v. Central Coal & Coke Co., 71 C. C. A. 135, 139, 138 Fed. 769, 773.

The true rule of law upon this subject is, therefore, that if a title by purchase were necessary to sustain the legal title of the trustees to this property in the case in hand, then, if by any legal possibility a title by purchase could have been acquired by them in any manner known to the law, the uninterrupted, exclusive, adverse possession of the trustees for more than 20 years raises the conclusive presumption that such a title was acquired by them.

The trustees proved the facts established at the first trial in the same way upon the second trial, which is here for review; but counsel for the Coal Company insist that those facts were insufficient to sustain a finding by the jury that the trustees had obtained a title by purchase, because the Coal Company proved that on May 26, 1869, the register of deeds, with whom the pastor left his deed to be recorded, registered a deed dated April 19, 1869, made by McCullom and acknowledged before Watts, to the free colored inhabitants of township 5 N. of range 31 W. of the fifth principal meridian, of an impossible and hence void description of land in that township, and that no other deed from McCullom appeared in the index or in the records of the county between 1863 and 1883. The plaintiffs, however, proved that the deed to the defendant and the deed to its grantor, both of which conveyed a title claimed under McCullom, contained after the descriptions therein these words, "Excepting out of the northwest quarter of the said southwest quarter (N.W. ¼ of S.W.¼) two acres upon which stands a church building heretofore known as the Wollage Colored Church, used as a church, schoolhouse, and graveyard;" that their church was known by that name; and that, when the Coal Company obtained its title, the meeting house and the graveyard were within 200 feet of the shaft of its mine and in plain sight from it. Counsel argue that this evidence conclusively proved that the deed which the pastor of the church received and recorded was the void deed from McCullom to the colored inhabitants of section 5, and from this fact they draw the inference

that there could not have been a conveyance to the trustees of this church.

Let the fact upon which they base this inference be conceded; but the fact that an alleged grantor made a void deed to others no more repels the presumption that he made one to alleged grantees than the absence of all proof of such a deed. In the absence of all proof of that character, the exclusive, uninterrupted, adverse possession of the plaintiffs for more than 20 years, and the presumption which that possession raised that they had acquired a legal title to the premises they occupied by purchase, if there was any legal possibility that they could have so acquired it, and the indisputable possibility that McCullom might have conveyed this property to the trustees by a deed in proper form, acknowledged before Watts, conclusively established their title. Indeed, the legal possibility, which certainly exists, becomes even a probability, in view of the fact that the deeds under McCullom's title contained the exception which has been recited. In this state of the case there was no substantial evidence that the acquisition by the trustees of the title to their property by purchase was a legal impossibility, the court might have lawfully instructed the jury that the title of the plaintiffs was conclusively established by their proof of possession and the presumption of a grant to them, and a verdict to the contrary could not have been sustained. In this state of the record there was no error prejudicial to the Coal Company, either in submitting this question of title to the jury, or in the instructions of the court, or in its refusals to instruct upon this issue.

We turn to the measure of damages. This was not an action for damage to the realty, but an action for the conversion of the coal wrongfully taken from the land; for the only damages prayed were for that conversion. Stone v. United States, 167 U. S. 178, 182, 17 Sup. Ct. 778, 42 L. Ed. 127; Peyton v. Desmond, 63 C. C. A. 651, 656, 657, 129 Fed. 1, 6, 7; United States v. Ute Coal & Coke Company, 85 C. C. A. 302, 304, 158 Fed. 20, 22. At the close of the trial counsel for the Coal Company requested the court to instruct the jury that the trustees could not recover in any event more than the value of the coal removed as it lay in the ground before its removal. The court denied this request, and charged the jury as follows:

"The rule for the measure of damages in cases of trespass in taking the coal of another depends upon the circumstances under which the coal was taken. If you find that the coal was either recklessly, willfully or intentionally taken by the defendant company from the land owned by plaintiffs, as aforesaid, without right, then the measure of damages is the enhanced value of the coal at the mouth of the shaft, or where it was finally converted to the use of the defendant. But if you should find that the defendant took and converted the coal from the land owned by the plaintiffs through inadvertence or mistake, or in the honest belief that it was acting within its legal right, then the measure of damages is the value of the coal as it was in the ground before it was disturbed by the defendant. The wrongful taking of coal, in the absence of any explanation or other evidence, raises a presumption of fact that the trespasser took it intentionally and willfully. That presumption, however, is a disputable one, which evidence may so completely overcome as to remove the presumption that it was intentionally and willfully done."

These rulings of the court are specified as error. But the charge was a correct statement of the measure of damages and of the pre-

sumption from a wrongful taking (Resurrection Gold Min. Co. v. Fortune Gold Min. Co., 64 C. C. A. 180, 191, 129 Fed. 668, 679; United States v. Ute Coal & Coke Company, 85 C. C. A. 302, 305, 158 Fed. 20, 23; United States v. Homestake Mining Co., 54 C. C. A. 303, 304, 308, 117 Fed. 481, 482, 486), and the only question for consideration here is whether or not there was any substantial evidence that the taking was willful or in reckless disregard of the rights of the plaintiffs. While mere negligence that is synonymous with inadvertence is insufficient alone to sustain a finding of a willful trespass or taking, one may be so far negligent as to justify the inference that he acted knowingly and intentionally and to warrant a jury in finding that his act was reckless or willful. An intentional or reckless omission to ascertain the rights or the boundaries of land of his victim for the purpose of maintaining ignorance regarding them, or a reckless disregard of them, is as fatal to the claim of a trespasser to limit the recovery of damages against him to the lower measure as is an intentional or willful trespass or taking. Golden Reward Min. Co. v. Buxton Min. Co., 38 C. C. A. 228, 238, 97 Fed. 413, 422; Resurrection Gold Min. Co. v. Fortune Gold Min. Co., 64 C. C. A. 180, 192, 129 Fed. 668, 680.

The notorious actual possession of real estate is notice to all of the title and of the rights of the possessors thereto. In 1902, when the Coal Company bought the mine under the lands adjoining the property in controversy, and during the time when it was taking the coal from this property, the trustees were in notorious possession of it, their church and graveyard were within 200 feet of the shaft of the defendant's mine, in plain sight therefrom, the company knew that it was taking coal from the property upon which this church and graveyard were located, and it knew that the deed to its grantor and its own deed contained the exception which has been recited. Under these circumstances it took the risk of the plaintiffs' claims when it appropriated their coal, for their notorious possession was notice of their title; and there was no error in the instruction of the court that it was "the duty of any person buying land who finds persons occupying the land to inquire into and ascertain the nature and the character of the occupancy." It is true that the attorney of the Coal Company and its other officers testified that when the company purchased the attorney examined the title and inquired of the grantor and of others than the trustees and the members of the church what the title and claims of the latter were, and that he was informed that they had no right or title to the land, except permission to use the surface for their church and burying ground, and that this attorney advised the other officers of the company, and they and he in good faith believed that the exception in the deeds was void, and that they conveyed to the Coal Company good title to the land and to the coal in controversy. All this was competent and material evidence for the consideration of the jury in their determination of the question whether or not the Coal Company took and converted the coal willfully or with a reckless disregard of the rights of the plaintiffs.

But the notorious occupation of the latter was notice of their exclusive, uninterrupted possession for more than 20 years, of their pre-

sumptive grant, of all these facts which the officers of the company would have learned if they had asked the trustees or the members of the church what their claims to this property were. While the attorney and the general manager of the company testified that they believed in good faith that the coal in controversy belonged to the company, they both testified that they never inquired of the plaintiffs or of any members of the church what their rights or claims were. In view of the notorious possession of the land by the plaintiffs, of the church and the graveyard thereon in plain view from the defendant's shaft, of the warning exception in the deeds under which it claims, and of the company's wary refraining from inquiring of the plaintiffs what they claimed their rights to the land and the coal in question to be, it cannot be lawfully held that there was no substantial evidence here that the Coal Company took and converted this coal with a reckless disregard of the rights of the plaintiffs. The question of the measure of damages to which the plaintiffs were entitled was rightly submitted to the jury.

It is assigned as error that the court refused to permit the defendant to prove by another witness the general reputation of one of its witnesses as a man and a lawyer for integrity, veracity, ability, and high standing; but it is only when the good reputation of a witness has been assailed by evidence that testimony in support of it is admissible, and here no such attack had been made.

The specification of error that the court permitted the plaintiffs to introduce in evidence the cross-examination of one of their witnesses contained in a deposition, after they had introduced the direct examination and the defendant had declined to put the cross-examination in evidence is baseless. When a deposition has been properly taken and filed in the court, either party may introduce all or any competent and relevant part of it which is not clearly fragmentary and misleading, and the opposing party may put in evidence any other like part. H. Scherer & Company v. Everest (C. C. A.) 168 Fed. 822, 827; Crotty v. Chicago Great Western Ry. Co. (C. C. A.) 169 Fed. 593.

There was no error in the trial of the case prejudicial to the Coal Company, and the judgment below must be affirmed.

It is so ordered.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes