## Griffith, et al. v. Clark Manufacturing Company, et al.

(Decided January 22, 1926.)

### Appeal from Daviess Circuit Court.

1. Mines and Minerals—Question of Willful Taking of Coal Held for Jury.—Evidence held sufficient to require submission to jury of question whether trespass and removal of coal from defendants' land were willful.

2. Mines and Minerals—Measure of Damage for Willful Taking of Coal Stated.—Measure of damage for the willful and intentional taking of coal from land of another is value of coal after its conversion at mouth of mine.

3. Mines and Minerals—Measure of Damage for Taking Coal Under Honest Mistake Stated.—Measure of damage for taking coal from land of another under honest mistake is merely its value in place.

4. Evidence—One is Presumed to have Intended Reasonable and Natural Consequences of His Acts.—One is presumed to have intended the reasonable and natural consequences of his acts, and his denial of that intention is not conclusive, if act was done recklessly or under circumstances warranting different conclusion.

5. Mines and Minerals—Evidence of Value of Coal Lands in Vicinity Not Competent on Measure of Damages for Unintentional Taking. —In action for damages for taking coal from lands of another, evidence as to value of coal lands generally in vicinity is incompetent, on question of damage for innocent taking of particular vein in question.

E. B. ANDERSON and W. FOSTER HAYES for appellants.

LOUIS I. IGLEHEART and ALBERT B. OBERST for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CLARKE— Reversing.

In this action in trespass appellants sought to recover $15,000.00 damages for the removal of coal from their land by appellees. They recovered a judgment for only $200.00 and have appealed.

Appellees admit the trespass and there is but little, if any, substantial contradiction in the evidence as to the

quantity of coal removed or destroyed.   The real if not
the only question at issue therefore was its value.   This
depends primarily upon whether the taking was willful
as alleged by plaintiffs or by honest mistake as main-
tained by defendants, since it is well settled that a differ-
ent and higher measure of damages prevails if the tres-
pass was willful than if by honest mistake.   Falls Branch
Coal Co. v. Proctor Coal Company, 203 Ky. 307, 262 S.
W. 300; North Jellico Coal Co. v. Helton, 187 Ky. 394,
219 S. W. 185.

The trial court instructed only upon the latter theory
and refused to submit the question of whether or not the
taking was willful, and this is the chief ground relied
upon for a reversal of the judgment.

Obviously this was reversible error if there was any
evidence to support appellants' contention that the coal
was willfully and knowingly taken.   Appellees and their
employes who testified for them denied that they inten-
tionally or knowingly drove their entries beyond their
own property line, and this is not contradicted by direct
evidence, but a very different conclusion is readily and
reasonably inferable from the proven and undisputed
facts.   There was no dispute or doubt as to the location
of the boundary line between the two tracts.   It was
plainly marked by a fence which, according to the map
introduced by appellees, was only about 100 feet from
their mine opening and about 30 feet from an air shaft.

The mine had been opened, the air shaft constructed
and an entry driven in the direction of and up to if not
beyond the division line before appellees acquired their
tract, and while they claim that they intended and be-
lieved that in their operations they turned the entry at
such an angle as not to encroach upon appellants' land,
they in fact began upon or immediately drove the entry
obliquely into appellants' coal, with the result that within
66 feet of the bottom of the air shaft, which was only 22
feet deep, their entire operations were upon the lands of
appellants.   It also appears from this map that measure-
ments with a tape line on the surface and in the mine
from the air shaft in the general direction of the opera-
tions at any time after they began would have informed
appellees that they were mining appellants' coal and not
their own.

In the face of these undisputed facts it is futile to
say that there was not sufficient circumstantial evidence
to carry the case to the jury as to whether or not the

taking was willful. The only excuse offered for the trespass, which could so easily have been avoided, is that before beginning operations they placed a rail on top and another at the bottom of the air shaft which they attempted to set parallel to the division fence and then attempted to direct their operations parallel to the rails from a point believed to be near the property line. From even so crude a method it is hard to understand how with any degree of care in its application better results would not have been obtained. We are, therefore, clearly of the opinion that the court erred in refusing to submit to the jury the question of a willful taking and in deciding as a matter of law that the trespass was due to an honest mistake.

This conclusion neither modifies nor enlarges the rule that the trespass must have been willfully and knowingly committed to entitle the owners to recover the value of the coal after its conversion rather than its value in place as is the rule where the taking is due to an honest mistake. It simply applies thoroughly established rules of evidence to the inquiry as to whether or not the trespass was willful or unintentional.

One is presumed to have intended the reasonable and natural consequences of his acts and his denial of such an intention is not conclusive if the act was done recklessly or wantonly or under circumstances warranting a different conclusion. It is rarely possible to contradict an affirmed intention otherwise than by the actions of the party, and such actions, where not reasonably consistent with the affirmed intention, are always admissible to contradict it in any character of action. Upon this question and with reference to the particular kind of action, the United States circuit court of appeals said in the case of Liberty Bell Gold Mining Company v. Smuggles Union Mining Company, 203 Fed. 795: "Intent, being a state of the mind, can but seldom be proven by direct evidence. For this reason the law presumes that a party intended the natural consequence of his acts, and if a person has the means of ascertaining facts, but refuses to use these means, and, reckless of rights of the true owner, appropriates his property to his own use, the law will presume that he did it intentionally and willfully." So also in Central Coal & Coke Co. v. Penny, 173 Fed. 340, the court said: "An intentional or reckless omission to ascertain the rights or the boundaries of land of his victim for the purpose of maintaining ignorance regard-

ing them, or a reckless disregard of them, is as fatal to the claim of a trespasser to limit the recovery of damages against him to the lower measure, as is an intentional or willful trespass or taking."

As for this error the judgment must be reversed it becomes important to determine the measure of damages for a willful taking.   This was said to be "the value of the converted article at the time it was appropriated" in the case of Falls Branch Coal Company v. Proctor Coal Company *supra;* and in North Jellico Coal Company v. Helton, *supra,* the court said: "Where the trespass is willful and not the result of an honest mistake, the measure of damages is the value of the coal mined at the time and place of its severance without deducting the expense of severing it."

While it is true as urged that it is not made entirely clear by either  of these statements whether the coal is to be valued at the mouth of the mine or at the place in the mine where it was shot down, it is clear, we think, that both statements by necessary implication refer to the mouth of the mine.   This is true since that is where for all practical purposes the severance and appropriation are completed and only there can the value of the coal after its severance and appropriation be ascertained with reasonable certainty and without taking into consideration the wrongdoer's exclusive possession and control of the means and expense of bringing it to the surface where only it is marketable.

We are also of the opinion that the court erred in permitting witnesses for appellees to testify over appellants' objection as to the value of coal lands in the vicinity.   The measure of damages for an unintentional taking is the value of the coal in the ground or a reasonable royalty for the privilege of mining it.   The material difference between value of coal lands generally and the value of a particular vein of coal in place or the privilege of mining it, is not only apparent but clearly demonstrated by appellees' evidence upon the two questions in this case.   Their witnesses testified that the value of coal lands in the vicinity was about $40.00 an acre, but that the customary price of the privilege for mining it in the vicinity was ½ cent a bushel.   It is agreed that appellees removed or destroyed the coal from about ½ acre of appellants' land, and if the value of coal lands generally is the proper  criterion for an unintentional taking, appellants were damaged only in the sum of $20.00, whereas,

at ½ cent a bushel, their damage was many times that sum.

Hence the court upon another trial will not admit evidence of the value of coal lands as it is in nowise relevant to any issue in the case.

We are also asked to say in this opinion whether the damages should be computed upon the whole amount of the coal shot down or merely upon the lump coal extracted, but this in our judgment is but an element of market value and a question of fact dependent upon customary practices of mining and selling coal in the vicinity rather than a question of law, and as there is to be another trial we refrain from expressing an opinion about it in the present state of the record.

Wherefore the judgment is reversed and the cause remanded for a new trial not inconsistent herewith.