## SANDLIN v. WEBB et al.

Court of Appeals of Kentucky.

May 25, 1951.

Roy W. House, Manchester, for appellant.

John M. Lyttle, Manchester, Hiram H. Owens, Barbourville, for appellees.

CAMMACK, Chief Justice.

J. K. Sandlin is appealing from a judgment on a directed verdict awarding him $365.30 damages for trespass to his land and removal of coal therefrom. The question of the proper measure of damages under the evidence is raised on this appeal.

Sandlin alleged that Estill Webb and Holt Finley leased some land adjoining his, and began mining operations. He further alleged that the appellees willfully and intentionally drove their mining operations onto his land and diverted to their own use and benefit 3,653 tons of coal. He asked for double the market value of the coal mined and removed, relying on KRS 433.270. The taking of the coal was admitted by the appellees, but their defense was that the taking was by honest mistake and was neither willful nor intentional. The appellees paid into court $365.30 and offered to confess judgment in that amount. At the close of the evidence the court directed the jury to return a verdict in favor of Sandlin for that amount.

In earlier decisions we held that the measure of recovery, where trespass was made in good faith and by honest mistake, was the value of the coal in place or the royalty value. That rule was modified in Hughett v. Caldwell County, 313 Ky. 85, 230 S.W.2d 92. If the trespass is willfully and knowingly or intentionally made, the measure of recovery is the value of the coal at the time it is appropriated without regard to expense of mining. See Kentucky Harlan Coal Co. v. Harlan Gas Coal Co., 245 Ky. 234, 53 S.W.2d 538. However, KRS 433.270, upon which Sandlin relies, provides: "Any person who willfully or knowingly mines or removes coal of the value of twenty dollars or more from the property of another, without color of title in himself to the coal so mined and removed, shall be fined not less than one hundred dollars nor more than five thousand dollars, and in addition be liable to the owner in damages double the market value of the coal mined and removed."

Sandlin contends that there was sufficient evidence to warrant submission to the jury the question as to whether under the statute, the coal was "willfully or knowingly" mined.

The evidence discloses these facts: The appellees secured a lease on about 40

acres of land adjoining that of the appellant. They employed a mine foreman to take care of the underground work. They also employed P. M. Sherwin, a mining engineer, to lay out the mine, make surveys and direct the operations. From time to time Sherwin furnished the appellees with maps showing the extent of the underground operations and the appellees in turn would give the map to the mine foreman to guide him. A map was furnished the appellees in this manner on March 20, 1948. At that time the mine work was proceeding directly toward Sandlin's property line and was about 200 feet away. It is not disputed that the boundary was plainly marked. The mine foreman testified that he was never furnished this map and he did not know that in March, 1948, he was only 200 feet from Sandlin's property. In December, Sherwin made another survey and ascertained that the mine had been driven onto appellant's property and the mines had crossed the boundary line in some places more than 150 feet. Sherwin furnished this information to the appellees and immediately they notified Sandlin and requested him to secure an engineer to determine how much coal had been taken from his property. There is evidence that the appellees offered to pay Sandlin an amount for the coal above the prevailing royalty rate in that community. Also, there is evidence that the coal taken from Sandlin's property was practically worthless.

A similar situation was before this Court in the case of Griffith v. Clark Mfg. Co., 212 Ky. 498, 279 S.W. 971, 972. The Court reviewed cases from other jurisdictions and discussed the law applicable in these words: "One is presumed to have intended the reasonable and natural consequences of his acts, and his denial of such an intention is not conclusive, if the act was done recklessly or wantonly, or under circumstances warranting a different conclusion. It is rarely possible to contradict an affirmed intention otherwise than by the actions of the party, and such actions, where not reasonably consistent with the affirmed intention, are always admissible to contradict it in any character of action. Upon this question, and with reference to the particular kind of action, the United States Circuit Court of Appeals said, in the case of Liberty Bell Gold Mining Company v. Smuggler Union Mining Company [8 Cir.], 203 F. 795, 122 C.C.A. 113:

"'Intent, being a state of the mind, can but seldom be proven by direct evidence. For this reason the law presumes that a party intended the natural consequence of his acts, and if a person has the means of ascertaining facts, but refuses to use these means, and, reckless of the rights of the true owner, appropriates his property to his own use, the law will presume that he did it intentionally and willfully.'

"So, also, in Central Coal & Coke Co. v. Penny [8 Cir.], 173 F. 340, 97 C.C.A. 600, the court said:

"'An intentional or reckless omission to ascertain the rights or the boundaries of land of his victim, for the purpose of maintaining ignorance regarding them, or a reckless disregard of them, is as fatal to the claim of a trespasser to limit the recovery of damages against him to the lower measure, as is an intentional or willful trespass or taking.'"

▮▮ In the case before us the appellees knew in March, 1948, that they were only 200 feet from Sandlin's property and working straight toward it. Their mine foreman testified that he was not notified of that situation. Can it be inferred from these facts that the appellees were guilty of such negligence as to warrant a finding that their trespass was made knowingly? We think that such an inference could be drawn legitimately and it follows that the court erred in taking this question from the jury. On a motion for a peremptory instruction, the trial court must regard all inferences that may be fairly and rationally drawn from the evidence favorable to the party opposing such motion. Aubrey's Adm'x v. Kent, 292 Ky. 740, 167 S.W.2d 831. See also Elliott v. Drury's Adm'x, 304 Ky. 93, 200 S.W.2d 141, and cases cited therein. The case should have been submitted to the jury.

Judgment reversed with directions to set it aside and for proceedings consistent with this opinion.