J. P. JOYCE, Administrator W. W. A., H. B. Cameron, Deceased, et al., Appellants,

v.

Robert P. ZACHARY, Administrator of the Estate of Simon Lebow, Deceased, et al., Appellees.

Court of Appeals of Kentucky.

Nov. 22, 1968.

Sandidge & Sandidge, Thomas E. Sandidge and James Sandidge, Owensboro, for appellants.

William G. Craig, Owensboro, for appellees.

CULLEN, Commissioner.

In Lebow v. Cameron, Ky., 394 S.W.2d 773, this court held that in developing and operating oil wells on a 55–acre tract of land in Daviess County under a "top" lease (subsequently held invalid) the Lebow interests were innocent trespassers and were required to account to the Cameron interests, who held a prior lease, only for the net profit derived from the oil rather than the gross profit. The case was remanded to the circuit court to adjudicate the propriety of the expenses for which the Lebow interests sought credit and for an accounting.

The circuit court proceeded to make the directed adjudication, allowing some of the claimed expense credits and disallowing others, and entered judgment accordingly. The Cameron interests have appealed, claiming that the court erred in allowing certain expense credits, in not adjudging the Lebow people to be jointly rather than severally liable for the profits in excess of the properly allowable expenses, in not awarding recovery for an overpayment of royalties to the lessor, and in not allowing recovery against the buyer of the oil for a sum paid out by it. The Lebow interests have cross-appealed, contending that the

court erred in disallowing some of its claimed expense credits.

The total amount claimed as credits by the Lebow interests was $70,410.29. Of this amount the trial court allowed approximately $57,000. This left approximately $13,000 for which the Cameron interests were awarded recovery. (Some $142,000 of the proceeds of the sale of the oil produced by the Lebow interests, representing the profit above their claimed expenses, was paid over to the Cameron interests at an earlier stage of this litigation.) The judgment was a several one, being apportioned against the members of the Lebow group according to the respective shares they had received in the proceeds of the sale of the oil.

■ The first contention of the Cameron interests on this appeal is that the expenses incurred by the Lebow interests after suit was instituted against them to invalidate their "top" lease, amounting to approximately $36,700, should not have been allowed by the circuit court, because the Lebow interests must be considered to have lost their status as *innocent* trespassers after suit was brought. Reliance is had on Loeb v. Conley, 160 Ky. 91, 169 S.W. 575; New Domain Oil & Gas Co. v. McKinney, 188 Ky. 183, 221 S.W. 245, and Lawrence Oil Corp. v. Metcalfe, 266 Ky. 819, 100 S.W.2d 217. As we read those cases, however, they do not stand for the proposition that the mere commencement of litigation against the trespasser precludes him from thereafter being considered an innocent trespasser. That such is not the rule is indicated by the decision in Swiss Oil Corporation v. Hupp, 253 Ky. 552, 69 S.W.2d 1037, where the trespassers were held to have retained their "innocent" status despite the filing of numerous lawsuits, including one directly against the trespasser to enjoin him from further drilling operations. As pointed out in the opinion in that case, the distinction between a willful trespasser and an innocent one is that the former knows he is wrong and the latter believes he is right. We do not accept the proposition that the mere fact that a suit is brought against the trespasser requires that he cease to believe he is right and begin to know that he is wrong. On the most recent former appeal of the instant case, cited at the outset of this opinion, we relied fully upon the Swiss Oil decision, and we consider it to be controlling of the question in issue. Accordingly, it is our opinion that the circuit court in the instant case properly rejected the argument that no credit could be allowed for expenses incurred by the Lebow interests after suit was filed.

■ The next claim of error relates to the allowance by the trial court of credit in the approximate amount of $8,800 for expenses incurred in waterflooding. The appellants maintain that the waterflooding was not of any benefit because it did not increase production; also that the flooding was done on an adjoining leasehold owned by the Lebow interests and the Cameron interests cannot be compelled to submit to unitization for waterflooding purposes. We do not conceive the law to be that the only expenses for which an innocent trespasser may be allowed credit are those which actually have been productive of the income against which credit is claimed. We think the test of allowability should be whether the expenses were *reasonably calculated* to be beneficial and productive. The obligation of the innocent trespasser, as stated in the Swiss Oil case, is to pay over the *profits,* and there appears to be no reason why normal standards of reasonableness of expenses should not be applied in determining what are the profits. As concerns the claim that the Cameron interests were in effect being subjected to compulsory unitization we point out that we are not dealing here with strict legal rights but with *equitable* principles, and the question is whether in *fairness* the waterflooding expenses should be allowed as a *credit*—not whether the Lebows could recover from the Camerons in a straight suit for the expenses. And with respect to the matter of fairness we observe that

there was evidence that the waterflooding did keep the production from decreasing. So it is our conclusion that the circuit court properly allowed the waterflooding expenses.

■ The third contention of the appellants relates to expenses for alleged supervisory services by one McMahan, who was owner of a one-half working interest in the Lebow "top" lease. McMahan claimed expenses amounting to $5,625 for loss of income from his regular business, and for living and traveling expenses, while he was in Daviess County for the purpose, as stated in the appellees' brief, of seeing "that his investment was properly protected." The circuit court held that the claim was "excessive" and allowed only $1350 of it. The appellants argue that none of the expenses should have been allowed and the appellees, on cross-appeal, maintain that the full amount should have been allowed. Applying the test hereinbefore set forth, we find no basis for a holding that any of McMahan's expenses were reasonably calculated to be beneficial or productive in the operation of the lease. There was no showing that McMahan knew anything about the oil business, or had any experience as an operator, or exercised any control or supervision over the drilling or operating of the wells, or was acting in any capacity on behalf of the other owners of the working interests. It appears that he was merely *observing* the operations to see how his investment was making out. While it is true, as held in the Swiss Oil case, that overhead expenses may be allowed as a credit to an innocent trespasser, we do not believe that McMahan's expenses properly can be classed as allowable overhead. Accordingly, it is our opinion that none of McMahan's expenses should have been allowed as a credit.

The next item in contention is an expense of $182.83 for services of an engineer in making an analysis of the oil reserve under the leased tract, for the purpose of determining the feasibility of the proposed waterflooding operation. The appellants argue that the circuit court erred in allowing credit for this expense. For the reasons hereinbefore stated with respect to the expenses of the waterflooding operation itself, we think the engineering expense properly was allowed.

■ As stated at the outset of the opinion, the judgment below was against the various members of the Lebow group *severally* in accordance with the respective shares they had received in the profits. The appellants contend that the judgment should have imposed joint and several liability, and they cite authority for the proposition that co-trespassers, as other joint tortfeasors, are jointly and severally liable. We think it is sufficient to point to a *statute* which has changed the common-law rule in Kentucky. See Alexander v. Humber, 86 Ky. 565, 6 S.W. 453; Central Passenger Ry. Co. v. Kuhn, 86 Ky. 578, 6 S.W. 441. That statute, KRS 454.040, expressly provides that in *trespass* actions the damages may be assessed severally.[1]

■ The next question concerns the claim of the Cameron interests for recovery of an overpayment of *royalties,* in the amount of $5,018.55, to the lessors, Theodore and Bessie Mercer. In the prior judgment that was here on appeal in Lebow v. Cameron, Ky., 394 S.W.2d 773, the circuit court had awarded recovery for that item. However, the parties interpreted our opinion on that appeal as reversing the judgment in every respect, including the Mercer item, and in the judgment now on appeal the circuit court disallowed any recovery for that item, pointing out that the former judgment had been reversed as to this item, and also stating that one of the members of the Lebow group, a man named Wilking who owned a share of the Lebow lease, was no longer before the court, that he was an indispensable party,

---

1. We note the fact that the circuit court found that the appellees were not partners or joint adventurers.

and that no recovery could be adjudged on the Mercer item for that reason.

We find no valid reason why recovery should not be awarded *against the Mercers* for the overpayment of royalty. Nothing in the opinion on the prior appeal suggests that such recovery would be improper. Nor do we see how Wilking was in any way an indispensable party on the question of whether the Mercers had been overpaid and should reimburse the Cameron interests for the overpayment. If recovery were sought against Wilking of course he would be an indispensable party, but in our opinion he was not indispensable to a recovery against the Mercers, nor do we think he would be indispensable even to a recovery *against the other holders of the working interests who authorized the overpayment*, if the circuit court should choose to award such a recovery.

 The final claim of the appellants relates to a recovery sought against the Owensboro-Ashland Company, which had purchased the oil produced by the Lebow operations. In the prior judgment which was on appeal in Lebow v. Cameron, Ky., 394 S.W.2d 773, the circuit court had awarded recovery against Owensboro-. Ashland for $1375, representing a share of the gross profits of the Lebow operations that had been paid to one Cornette, who was not a party to this litigation but was an assignee of one Hartsough, who was a party to the suit. This amount when added to the amounts to be recovered from the other members of the Lebow group equalled $71,000 which was approximately the amount of the expenses in dispute. When the circuit court, following reversal of the judgment on the appeal, entered the new judgment allowing credit for some $57,000 of expenses, the result was that the portion of liability attributable to the Hartsough-Cornette interest was reduced to only $123.86 (*net* profit rather than *gross*). However, instead of entering judgment against Owensboro-Ashland for that amount the court entered judgment against *Hartsough*. The net effect of this seems to have been that the Cameron interests recovered the *proper* amount from *Hartsough* rather than an *improper* amount from Owensboro-Ashland. The appellants argue that the original judgment against Owensboro-Ashland was not in fact or in law reversed or reversible because Owensboro-Ashland did not perfect an appeal and was not a party to the appeal. This contention may be correct but for us to sustain it would result in the appellants' being overpaid and in this equitable proceeding the achievement of equity is the goal.

The appellants make a minor point of the fact that the total of the several awards against the various appellees is some $800 short of the amount of the expense *disallowed* by the circuit court. No one offers any clear explanation for this shortage. Perhaps some of it can be explained by the fact that no recovery was allowed for so much of the net profit as was received by Wilking, because he died and the action was not revived as to him. The only direction we need to make is that upon recomputation of the amounts of the recoveries pursuant to the mandate to be issued on this opinion, any mathematical errors that may have occurred should be corrected.

 We come now to the cross-appeal. One of the items covered by the cross-appeal—the matter of McMahan's expenses —has hereinbefore been disposed of. That leaves for determination the allowability of credit to the appellees for ad valorem taxes paid by them and for the expenses of drilling a dry hole. The appellees maintain that the circuit court erred in disallowing credit for these items.

During the period the Lebow interests were in possession of the leasehold they paid $1,445.40 of ad valorem taxes assessed against the leasehold. In strict theory those taxes were assessed against the *Lebow leasehold* and their payment would not relieve the Cameron interests of taxes assessable against the *Cameron* leasehold.

However, in practical effect only one tax was undertaken to be assessed and that was intended to be against the leasehold value regardless of ownership, so the payment of the taxes by the Lebows did redound to the benefit of the Camerons. The cases relied upon by the appellants, holding generally that taxes voluntarily paid by a person under the mistaken belief that he is the owner of the property cannot be recovered by him from the true owner, are in our opinion not applicable, because we are not dealing here with a legal right of recovery but with the equitable allowance of credit. It is our conclusion that the tax payments should have been allowed as a credit.

As concerns the cost of drilling the dry hole it is our opinion that those costs, under the test hereinbefore adopted, were reasonably calculated, when incurred, to be beneficial and productive, and therefore credit should have been allowed for them. We do not interpret Lawrence Oil Corp. v. Metcalfe, 266 Ky. 819, 100 S.W.2d 217, as holding that an innocent trespasser can never receive credit for the expense of drilling a dry hole. What the Lawrence case stands for is that the innocent trespasser cannot *recover* from the true owner the cost of drilling a dry hole, where the trespasser has not drilled any producing wells on the leasehold. (In the Lawrence case there were producing wells on a portion of the original leasehold but not on the portion occupied by the trespasser.) But as hereinbefore pointed out, we are dealing here with the allowance of equitable *credit* against profits sought to be recovered by the true owner, and different considerations enter in. In the instant case the drilling of the dry hole served to help define the limits of the oil field and was a common exploratory expense of development. It is our opinion that the credit should have been allowed for this expense.

The judgment is affirmed except as to the four items hereinbefore found to have been erroneously adjudged, namely, the McMahan credit, the Mercer overpayment, the tax credit, and the dry-hole credit. As to the first two of those items the judgment is reversed on the direct appeal, and as to the last two of those items the judgment is reversed on the cross-appeal, with directions to the trial court to enter judgment in conformity with this opinion.

All concur.