CHURCH AND MULLINS CORPORA-
TION; Claude Johnson, Individually,
etc.; Charlie Johnson; Jack Johnson;
Martha Kendrick; Priscilla Stiltner;
Hazel Johnson; Ben Johnson; Molly
Thornberry; Betty Jane Johnson Stew-
art, Movants/Cross–Respondents,

v.

BETHLEHEM MINERALS COMPANY;
Bethlehem Mines Corporation; Beth–
Elkhorn Corporation; Beth Energy
Mines, Inc., Respondents/Cross–Mov-
ants.

Nos. 90–SC–000081–DG, 90–SC–000784–DG.

Supreme Court of Kentucky.

June 4, 1992.

Rehearing Denied Nov. 23, 1994.

Herman W. Lester, Pikeville, Gilbert K. Davis, Vienna, Va., Gary C. Johnson, Pikeville, S. Strother Smith, II, Abington, VA, for movants/cross-respondents.

John A. Bartlett, Joseph L. Hamilton, Thomas E. Meng, Lively M. Wilson, Stites & Harbison, Louisville, John M. Stephens, Stephens, Thomas & Hunt, Pikeville, for respondents/cross-movants.

JOHN DOUG HAYS, Special Justice.

This case involves two judgments of the Pike Circuit Court regarding several separate parcels of property located in Pike County, Kentucky, but known collectively throughout this litigation as Tract 42. The first judgment determined title to the property, and the second awarded damages for trespass.

This action commenced when Bethlehem Mines, hereafter Bethlehem, filed a complaint against John Johnson, claiming title to the mineral estate underlying the 375 acres of land known as Tract 42. Johnson counterclaimed claiming ownership of the surface as well as the minerals. Subsequent to initiation of this litigation, John Johnson died, and his heirs are now claimants in this pro-

ceeding. Church and Mullins Corporation was and is a lessee of certain mineral rights granted to it by John Johnson.

The act which precipitated this litigation was in 1964 when a survey team from Bethlehem appeared on John Johnson's property. John Johnson forcefully evicted them. Bethlehem, by affidavit of good title, sought and obtained an *ex parte* temporary restraining order from Circuit Judge Lowe which prevented Mr. Johnson from interfering with surface surveying.

In 1965, John Johnson moved to quash the restraining order. Bethlehem responded that it was using the restraining order to survey. Bethlehem further contended that the motion was premature because the rights of the parties had not been adjudicated. The court denied Johnson's motion to quash.

Bethlehem in 1965 was in possession of a report from its attorney, Francis Rice, discussing the "ramifications and complications" involving the title to the minerals under Tract 42. That report recites many of Johnson's claims to title. It specifically puts Bethlehem on notice that the primary deed it relies upon for title to the 375 acre tract only covers the Fleming and Estep patents. The language is as follows: "On May 12, 1890, when Denny Vanover conveyed the coal to Richard M. Broas, Vanover had no title of record, except to the land covered by the Fleming and Estep surveys."

In 1968, Bethlehem removed in excess of 3,000 tons of coal from the disputed tracts without providing any notice to the court or Johnson that it was conducting mining operations on the disputed premises.

No further mining was conducted on the premises until 1970, at which point Johnson and another lessee leased portions of Tract 42 to Church and Mullins. Church and Mullins thereafter began mining operations of the coal underlying a 93¾ acre tract known as the "Childers Patent." At about the same time, Bethlehem had entered the same tract, again without disclosure to the court or to any parties, and commenced mining operations. In 1971, Bethlehem filed an amended complaint adding Church and Mullins as a party defendant and seeking to quiet title to the minerals. Bethlehem sought a temporary injunction to prohibit Johnson and Church and Mullins from any further mining pending a decision on title.

Bethlehem filed a map prepared by Mr. Lewis Quick, Bethlehem's chief property engineer, as well as an affidavit sworn to by Quick in support of the injunction. Since the court had not yet litigated the title issue, it granted the relief sought by Bethlehem. The map filed by Quick depicting Bethlehem's mining activities was erroneous. In fact, as of the date of Quick's affidavit, Bethlehem, contrary to the sworn declarations of Quick, had already extended its mining operations several hundred feet into the Childers Patent tract. Thereafter, Bethlehem continued mining and removed several hundred thousand tons of coal from the Childers Patent which belonged to Johnson.

In 1975, after most of the disputed coal had been mined, the parties learned of Bethlehem's mining activity. At that point, Johnson and Church and Mullins filed their claim for willful trespass and damages.

The final decision on the question of title was made by the Pike Circuit Court in 1986. As the Court of Appeals points out, the trial judge entered a lengthy, well-reasoned opinion and judgment determining the issue of title. The Pike Circuit Court awarded title to the minerals of 164 acres underlying Tract 42 to Bethlehem, while the Johnson interests were successful in being awarded title to the remaining 211 acres of surface and minerals. The opinion of the Pike Circuit Court regarding title was affirmed by the Court of Appeals.

The trial court thereafter in a separate judgment awarded damages and prejudgment interest against Bethlehem in the amount of $16,947,778.00. The trial court found that the trespass by Bethlehem was willful, and the Court of Appeals reversed, finding that Bethlehem was an innocent trespasser. The trial court found that the prejudgment interest was in order, and the Court of Appeals reversed. The trial court awarded post-judgment interest at a rate of 10 percent, and the Court of Appeals reversed, finding that post-judgment interest should have been 12 percent, as provided by

KRS 360.040. The trial court found that Johnson and Church and Mullins were not entitled to pre–1975 damages under KRS 433.270, and the Court of Appeals affirmed. We granted review of these holdings.

The issues may be summarized as follows:

1. Whether the trial court's determination of title accords with the trial facts and the law's application.

2. Whether the trial court's holding of willful trespass has a factual basis under the principles of *Swiss Oil Corporation v. Hupp*, 253 Ky. 552, 69 S.W.2d 1037 (1934) and related cases.

3. Whether the trial judge abused his discretion in awarding prejudgment interest.

4. Whether pre–1975 damages should be awarded under KRS 433.270.

1. *The Title Issue*

█ This Court has carefully considered numerous title theories advanced by the respective parties, including those raised for the first time in this Court by the respondent. The trial court, in a very thorough, well-documented opinion, adjudicated the respective interests of the parties on the disputed premises. The appropriate standard of review is whether or not the trial court was clearly erroneous or abused its discretion. As the Court of Appeals opined, there is an abundance of title law, but in order to make application thereof there must be factual support. The Court of Appeals found that the trial court's determination of the intricate title questions involved was not clearly erroneous. Suffice to say, this Court, upon review, cannot say the trial court erred in adjudicating the title interests of the competing parties. It is not for us to determine whether or not we would have reached a different conclusion, faced with the same evidence confronting the trial court.

Bethlehem relied to a great extent on the 1865 Gallop and Sowards survey to support its title claims. The trial court found the Gallop and Sowards survey to be void. We, along with the Court of Appeals, are not willing to go that far. However, as with the trial court and the Court of Appeals, we agree that Bethlehem failed to prove that the contested land fell within that survey.

Our role is not to substitute our opinions for those of the trial court in the absence of clear error; therefore, we affirm the opinion of the Court of Appeals on the issue of title, the Court of Appeals having correctly applied the standard of review.

2. *The Trespass Issue*

█ The appropriate standard of review is whether or not the trial court was clearly erroneous or abused its discretion in finding that Bethlehem's trespass was willful. If it was not, then its holding shall not be disturbed by an appellate court.

█ In determining the nature of the trespass committed by Bethlehem, the trial court had to find whether the trespass was innocent or willful. The law is that every trespass is presumed willful, with the burden upon the trespasser to prove his innocence. *Swiss Oil, supra* 69 S.W.2d at 1041. The test of willfulness is whether a trespass

> was perpetrated in a spirit of wrongdoing, with the knowledge that it was wrong, or whether it was done under a bona fide dispute, as where the circumstances were calculated to induce or justify the reasonably prudent man, acting with a proper sense of the rights of others, to go in and to continue along the way.

*See also, Loeb v. Conley*, 160 Ky. 91, 169 S.W. 575, 581 (1914), and *Sandlin v. Webb*, Ky., 240 S.W.2d 69, 70 (1951).

Bethlehem cites two factors which have traditionally been considered, though not conclusive or exclusive of other factors, in mitigation of a finding of willful trespass.

The first factor cited by Bethlehem is that it relied upon advice of counsel. The evidence it introduced in support of this is a 1965 document designated "Report of Title" prepared by Francis Rice. This document indicates that it merely sought to discuss the many ramifications and complications involving the title to the minerals under Tract 42. This document was apparently prepared by Bethlehem's counsel in 1965 shortly after the initiation of this lawsuit in 1964. The first trespass onto Johnson's coal by Bethlehem

was in 1968. The record is silent of any showing by Bethlehem that prior to its entry on Johnson's coal in 1968 that it was ever advised by counsel that it had the legal right to do so. The Court of Appeals points out that the document prepared by Bethlehem's attorney in 1965 "did not deny the existence of a valid title." The document also did not confirm good title in Bethlehem.

The second factor that Bethlehem asserts to establish its innocence is that it had color of title to the subject premises. However, Bethlehem was on notice prior to the 1968 trespass that (i) John Johnson had record title claim to the Childers Patent and (ii) that Johnson was in adverse possession of the surface of Tract 42. With this knowledge, and while litigation on the issue of title was pending, Bethlehem entered the disputed premises without informing either Johnson or the court.

The factors to be considered by a court, in reviewing a decision characterizing a trespasser as willful or innocent, are succinctly set out in *Swiss Oil, supra.* That decision indicates that the primary test to be applied is the intention, or the state of mind, of the trespasser based upon the circumstances surrounding the trespass at the time the trespass occurred. As the case points out, determining intention of a party generally cannot be done by direct evidence. The case directs a court to consider the trespasser's "... sincerity and his actual intention at the time."

The trial court must review the totality of the circumstances surrounding the trespass to determine whether the trespasser "... was acting in good faith and under an honest conviction that he was right in his assumption." *Id.* 69 S.W.2d at 1041. In determining whether or not Bethlehem's trespass was willful or innocent, the trial court considered the following factors: a. the actions of Bethlehem throughout the course of litigation and in the field; b. the "cavalier attitude" of its chief property engineer toward the truth; c. the ample time Bethlehem had to litigate the title to the minerals prior to initiation of its mining activities; and d. the "further evidence in the case, and the inferences to be drawn from the evidence showing plaintiffs'

willful, knowing conduct and callous and reckless disregard for the property rights of the defendants."

The trial court's opinion stated: "With this knowledge, and with no attempt to resolve first the title question, [Bethlehem] deliberately chose the course of willful and reckless disregard of defendants' irreparable property rights by the entry and removal of the Number 2 Elkhorn seam of coal on Tract 42."

The trial judge rendered findings of fact tending to show the actions of Bethlehem were not bona fide mistakes. There is no evidence showing that the actions of Bethlehem were ever done on the advice of counsel. The document, prepared by its litigation attorney, never advises such action, never confirms title in Bethlehem, nor is there any other evidence in the record showing that this document as prepared by its litigation counsel was relied upon by Bethlehem. The document prepared by its attorney prior to its trespass in 1968, put Bethlehem on notice of the record title claims of John Johnson, and the trial court found that Bethlehem had actual knowledge, through its agents, of the adverse possession of Johnson of Tract 42.

The question of the intent of the trespasser is for the trier of fact to determine. In determining whether or not the trespasser acted in good faith, under an honest conviction that he was right, and with a proper sense of the rights of others, this Court must apply the facts established by the trial Court to the applicable law, unless clearly erroneous. The burden of proof was on Bethlehem to establish its trespass as innocent. The trial Court found that Bethlehem had failed to offer "persuasive evidence that they were anything but deliberate, willful and reckless in the entering upon and taking of defendant's coal."

One cannot calculate with precision what is in another's mind, and the problem becomes more acute where the "mind" to be probed is that of a corporation, whose intent is, by necessity, the sum of the minds of several natural persons. Therefore, the ultimate question of "good faith" must be found by inferences drawn from all the facts and evidence. These inferences must be drawn by the trial court. The determination of willfulness is peculiarly a fact question for which the standard of appellate review is well-es-

tablished. The issue isn't whether or not an appellate court would have decided the case differently from the trial court. The issue is whether or not the findings of the trial court are clearly erroneous or whether the trial court abused its discretion. *Cherry v. Cherry*, Ky., 634 S.W.2d 423, 425 (1982). The reliance of Bethlehem on the *Swiss Oil* decision, as well as the decision in *Joyce v. Zachary*, Ky., 434 S.W.2d 659, 661 (1968), for the proposition that the 1971 temporary injunction was a sufficient adjudication of title to justify its mining is misplaced. In both *Swiss Oil* and *Joyce,* this Court was presented with cases where a trespasser had relied upon an opinion of independent counsel that its title was good. This is not the factual situation presented in the case at bar. A decision by a trial court on a temporary injunction is not a judgment.

In reviewing the facts found by the trial court on the issue of characterizing the trespass, it is our opinion that its findings were not clearly erroneous. In comparing those facts to the standards set out in *Swiss Oil,* we hold that the Court of Appeals erred in reversing the decision of the trial court. The decision of the Court of Appeals is hereby reversed, and the trial court's Judgment that Bethlehem was a willful trespasser is reinstated.

### 3. *Prejudgment Interest Issue*

█ The trial court awarded prejudgment interest to the appellants. Such interest was not to be compounded, but was to be calculated as simple interest. The Court of Appeals, relying upon its determination that the trespass was not willful, reversed the trial court.

Our recent decision, *Nucor Corp. v. General Electric Co.,* Ky., 812 S.W.2d 136 (1991) addresses the evolution of the question of whether or not to award prejudgment interest in actions involving property, or as in that particular case, contract. We are not concerned here as in *Nucor* with whether the award should be made by judge or jury, as it is now established that the determination of whether or not to award prejudgment interest as consequential flowing damages is a matter for the trial court and not the jury.

The determination as to whether or not to award prejudgment interest is based upon the foundation of equity and justice. It is a determination to be made by the trial court and to be disturbed by an appellate court only upon a showing of an abuse of discretion. Given that the trial court determined that Bethlehem was a willful trespasser, and given the length of time for which the trespass continued, we cannot say the trial court abused its discretion in awarding prejudgment interest. The decision of the Court of Appeals regarding prejudgment interest is, therefore, reversed, and the judgment of the trial court is reinstated.

### 4. *The Pre–1975 Damage Issue*

The trial court held that Johnson and Church and Mullins were not entitled to receive double damages as Bethlehem had shown "color of title." The Court of Appeals affirmed. We find no abuse of discretion by the trial court disallowing Johnson and Church and Mullins from recovering double damages and accordingly affirm.

Based on the foregoing, we affirm the Court of Appeals on the issues of title and pre–1975 damages. We reverse the Court of Appeals on the issues of willful trespass and pre-judgment interest. We affirm the trial court and reverse the Court of Appeals holding that interest on the judgment entered by the Pike Circuit Court shall be 12 percent as opposed to the 10 percent ordered.

LAMBERT, LEIBSON, and SPAIN, JJ., concur.

REYNOLDS, J., dissents with a separate opinion in which STEPHENS, C.J., and WINTERSHEIMER, J., join.

REYNOLDS, Justice, dissenting.

I respectfully dissent to that portion of the majority opinion that reversed the Court of Appeals upon the issue of innocent trespass and determined that appellees were willful trespassers. Irrespective of whether or not the Court of Appeals disagreed with trial-court-found facts or inferences, it is manifestly apparent that the trial court and the majority opinion misapplies the law of willful and innocent trespass.

The majority opinion states that the record is silent of any showing by Bethlehem that prior to its entry on Johnson Coal in 1968 it was ever advised by counsel that it had the legal right to do so. Apart from a title report, there were records of deeds and

claims from which appellees' map surveys had been prepared, and there was deed survey testimony gleaned from attorney advice that it held mineral tract title to Section 42. It was additional error to reject the advice of reputable counsel thereafter because litigation may have begun.

Perhaps the conclusion of the third and final judge contributed to the enormity of the error; that conclusion being that Bethlehem had somehow promised to do nothing but survey at the time that it sought and obtained injunctive relief. The court, speaking through its records, simply does not support the latter conclusion of the latter judge. A willful trespasser is one who knows when he is wrong and an innocent one is he who believes that he is right. *Swiss Oil Corp. v. Hupp,* 253 Ky. 552, 69 S.W.2d 1037 (1934), provided:

> The test to be applied is that of intent, but, being a state of mind, it can seldom be proved by direct evidence. The conditions and behavior are usually such that the court can determine whether the trespass was perpetrated in a spirit of wrongdoing, with a knowledge that it was wrong, or whether it was done under a bona fide mistake, as where the circumstances were calculated to induce or justify the reasonably prudent man, acting with a proper sense of the rights of others, to go in and to continue along the way. And, in judging the trespasser's acts, regard must be had for conditions as they then appeared rather than as disclosed in the light cast backwards by the future. In a word, they are to be judged prospectively, not retrospectively. So, as stated in *Loeb v. Conley,* 160 Ky. 91, 169 S.W. 575, Ann. Cas. 1916B, 49, whether a trespasser is to be so regarded depends upon the circumstances surrounding the transaction, and it is from those facts and circumstances that the court will determine whether he was acting in good faith and under an honest conviction that he was right in his assumption.

*Id.* [69 S.W.2d] at 1041. The Court also listed several factors to be considered as evidencing good faith which included:

There should be at least reasonable doubt of the other party's exclusive or dominant right. The trespasser acted upon the advice of reputable counsel, to whom all the facts had been fairly submitted upon questions of legal right concerning which a layman could hardly have knowledge, such as a disputed title, even though that advice proves to be bad. Of stronger influence, manifestly, is the fact that a court of competent jurisdiction has rendered a favorable judgment upon identical or similar issues. The test is not the trespasser's violation of the law in the light of the maxim that every man knows the law, but is his sincerity and his actual intention at the time. Therein is to be found his justification. A phase entering into the situation may be the character of the property as it pertains to the question of whether delay would endanger loss and action would seem to be urgent.

*Id.* at 1041–42.

The situation must be viewed prospectively, not retrospectively. The fact that litigation has commenced in no wise precludes a trespasser from being found innocent, nor does it require that he disbelieve that he is right and know that he is wrong. The trial court erred by surmising that Bethlehem, or any party, was under a duty to litigate the claim in its entirety before mining or acting. *See Joyce v. Zachary,* Ky., 434 S.W.2d 659 (1968). The 1964 restraining order and the 1971 temporary injunction finding Bethlehem had shown title to minerals under Tract 42 and under standards required for such relief from an earlier judge do, at a minimum, demonstrate probability of prevailing as to the merits of a title claim. A characterization in the majority opinion that "a decision by a trial court on a temporary injunction is not a judgment" is, of itself, a correct pronouncement. It is, however, incorrect when used herein and by its implication that innocent trespass may not be discerned from an action as the one setting forth the grounds in seeking a temporary injunction.

The record does not bear out that Bethlehem said that its only purpose was to go on the land to set up a triangulation point for survey. Preparatory to entering the 1971 injunction was a finding by the trial court that Bethlehem showed ownership rights in the coal in Bethlehem's Denny Vanover Mineral Tract 42.

The legal standards of *Swiss Oil Corporation, supra,* were ignored. Bethlehem added nothing to any delay by seeking summary

judgment prior to obtaining injunctive relief in 1971. This period transcended appellants' motion for relief by way of summary judgment. The development of Johnson's final title claims was long in the making and entered by amendment after the passage of many years. Thus, Bethlehem's reliance on the strength of its own title and reasonable doubts as to the delayed validity of the Johnson title claims was a standard erroneously discarded by the trial court.

I would affirm the Court of Appeals.

STEPHENS, C.J., and WINTERSHEIMER, J., join in this dissent.