**COMMONWEALTH of Kentucky, DEPT. OF HIGHWAYS, Appellant,**

**v.**

**John L. PARKER et al., Appellees.**

Court of Appeals of Kentucky.

March 19, 1965.

Robert Matthews, Atty. Gen., Wm. Lamkin, Jr., Asst. Atty. Gen., Frankfort, Dandridge F. Walton, Emery & Carroll, Paducah, for appellant.

John L. Dorsey, Jr., and Dorsey & Sullivan, Henderson, for appellees.

DAVIS, Commissioner.

The Department of Highways appeals from the judgment awarding appellees $12,-305 in this condemnation proceeding. Three stated grounds for reversal are presented: (1) The court erroneously failed to strike valuation testimony based on "asking price"; (2) it was error to permit a valuation witness to utilize a "comparable sale" because the sale had occurred after the date of taking in the present case; and (3) the court erroneously refused to strike testimony of a valuation witness who based his testimony on factors which were irrelevant, speculative and noncompensable. There is no specific claim that the resulting verdict is excessive, although we indulge the assumption that the appeal implies that.

Prior to the taking the appellees owned a lot situated on the west side of U. S. Highway 41 just north of Henderson. The lot had frontage of 150 feet along U. S. 41. Elm Street abuts the rear or western boundary of the lot, which is 126 feet in width. The lot had depth of 191 feet on its southern boundary and 160 feet on its northern side. An irregularly shaped grocery store building is located in the northeastern corner of the lot; the building is about 36 feet in width at its front. The depth of the building is 62.5 feet; the north wall is straight, but the south wall jogs, at a depth of 36.2 feet, so that the width of the rear of the building is 41.3 feet.

Before the taking the front of the building was 25.5 feet from the existing right of way line of U. S. 41 and 43 feet from the closest edge of the traveled portion of the highway. After the taking the new right of way line will be 8 feet from the building front, and the edge of the new pavement is to be 17 feet from the building. There is a stoop or porch in front of the building, 7 feet in width and extending 4 feet toward the highway.

The right of way taken is a strip along the entire frontage of the lot (on U. S. 41) for an average depth of 17.6 feet, embracing 2,640 square feet. The jury awarded $11,-500 as the difference in the market value of the property, before and after the taking, plus $805 as the "fair market rental value" of the temporary easement's 1,100 square feet.

The first attack upon the judgment relates to testimony offered by appellee Howard DeJarnett, one of the owners. On cross-examination the following questions and answers appear:

"Q.5. What do you base your before value of your grocery property there on?

"A. Well, the amount we have in it.

"Q.6. You have any knowledge of market value?

"A. Well, I know what I would want for it before the taking, before they ever started the road, yes sir.

"Q.7. Is that what you base your opinion on?

"A. Yes sir.

"Mr. Walton: (Attorney for appellant) Move to strike his testimony.

"Mr. Dorsey: (Attorney for appellees) He is the owner of the property and there is no question about the value of it.

"Mr. Walton: Object on that basis."

Following this colloquy there appears nothing in the record as to any ruling of the court, nor is there any recorded showing that appellant's counsel insisted upon a ruling on his motion to strike and his objection.

We think it too late to debate the question that such a basis for valuation is incompetent. For some of the authorities so holding see: Com., Dept. of Highways v. Darch, Ky., 374 S.W.2d 490, 492, and authorities there discussed. In 7 A.L.R.2d 781, et seq. is found a collation of authorities on the subject, and there it is recognized that the vast majority of American jurisdictions reject "offer" evidence as a basis for valuation.

However, the appellant failed to pursue its motion and did not obtain a ruling of the court. For this reason the objection to this incompetent evidence was waived and may not be considered on appellate review. Moore v. Collins, Ky., 314 S.W.2d 207; 2 Ky.Digest, Appeal & Error, Under these circumstances we do not have for review the question whether the quoted evidence should have been stricken.

There is no merit in the complaint that one of appellees' valuation witnesses was permitted to use as a "comparable" a sale which occurred after the taking. In the first place, there is no definitive showing in the record that the questioned sale did occur after the taking date. Secondly, it would not have mattered anyway. There is no hard and fast rule which automatically precludes reference to a sale, as a "comparable sale," merely because the "comparable sale" occurred at a date later than the taking date. Our rule, and the one usually followed, simply requires that the "comparable sale" be a sale that is indeed comparable—that is, one that is reasonably similar to the subject property. This presupposes that the similarity will include, among other things, reasonable proximity to the time of taking. Cf. West Ky. Coal Co. v. Com., Dept. of Highways, Ky., 368 S.W.2d 738, and cases there cited. We consider sound the reasoning of the U. S. Circuit Court of Appeals, 2nd Circuit:

"There is no absolute rule which precludes consideration of subsequent sales. The general rule is that evidence of 'similar sales in the vicinity made at or about the same time' is to be the basis for the valuation and evidence of all such sales should generally be admissible, United States v. 5139.5 Acres of Land, etc., 4 Cir., 1952, 200 F.2d 659, 662; 1 Orgel, Valuation Under Eminent Domain, § 139 (2d Ed.1953), including subsequent sales. Cf. People ex rel. Horwitz v. Miller, 1st Dept. 1944, 267 App.Div. 897, 47 N.Y.S.2d 168; People ex rel. Four Park Ave. Corp. v. Lilly, 1st Dept. 1942, 265 App.Div. 68, 37 N.Y.S.2d 733, 737–738. The generality of this rule is limited, however, by the consideration that a condemnation itself may increase prices and the government should not have to pay for such artificially inflated values. See International Paper Co. v. United States, 5 Cir., 1955, 227 F.2d 201. But that possibility does not produce a hard and fast exclusionary rule. In every

case it is a question of judgment as to the extent of this danger and, particularly where a judge is sitting without a jury, it would seem the better practice to admit the evidence and then to weigh it having due regard for the danger of artificial inflation." United States v. 63.04 Acres of Land, 245 F.2d 140, 144.

■ Since there was no showing here that the comparable sale did occur after the taking date, nor was there any effort to demonstrate that any appreciable change in market conditions had impaired comparability, there is clearly no merit in the appellant's charge of error in this regard.

■ The final assignment of error relates to the testimony of appellees' witness Fryer, a real estate broker; the crux of the matter may be best understood from this quotation of cross-examination of the witness:

"Q.27. Now, Mr. Fryer, after this taking you valued what is remaining at $18,050.00, a difference of $18,850.00, what were some of the things that entered into your appraisal, entered into that difference that went to the value of that property that depreciated it?

"A. Well, sir, one of the main things I considered in this appraisal this store building at the present time is located very close to the highway, they had enough room to where they could park cars out in front, they could park cars across the entire one hundred and fifty feet of the frontage there and when you take seventeen foot six inches off of there then this absolutely eliminates all front parking, there is absolutely no way to park an automobile out in front without it being out in the highway. And in my opinion this grocery store building has practically no value after the taking especially for use as a grocery store. Now it could be used as a warehouse or storage but anything that catered to the retail public I think would be very undesirable because a child could dart out the front door of the building and just in two or three steps be out in the highway. I have talked to Mr. DeJarnett, of course as I say I sold them the property back a number of years ago, about fifteen years ago, but this, the highway traffic will be very close to the front of the building and a truck could run over a rock or stick and just flip it right inside the building very easily."

It is obvious that some of the matters mentioned by the witness are irrelevant, speculative and noncompensable, e. g. danger to children and possibility that passing trucks might "flip" a rock or stick into the building. It would appear that these matters particularly relate to possible interference with the operation of the particular grocery business. In any event, such projections of possible happenings must be condemned as highly speculative. On the reading of the entire evidence of witness Fryer, however, it is the opinion of the majority of the Court that the quoted portion of his evidence is not sufficient to warrant striking his testimony; neither is it regarded as prejudicially erroneous. CR 61.01.

■ For the appellees the testimony as to differences in before and after values ranged from $17,869 to $22,500. The values ascribed for appellees to the temporary easement ranged from $1,200 to $2,500. The jury's verdict was well within the limits of the evidence. The verdict appears quite liberal, but is not considered by the Court as so excessive as to appear to have been rendered as the result of passion and prejudice.

The judgment is affirmed.