Thomas E. HOWARD, d/b/a Tower Oil
Company, Appellant,

v.

KINGMONT OIL COMPANY, A Kentucky Corporation, and South Kentucky Purchasing Company, a Kentucky Corporation, Appellees.

KINGMONT OIL COMPANY,
Cross-Appellant,

v.

Thomas E. HOWARD, d/b/a Tower Oil
Company, Cross-Appellee.

Court of Appeals of Kentucky.

May 1, 1987.

**184**

Charles J. McEnroe, Somerset, for appellant and cross-appellee Thomas E. Howard.

Tim Lavender, Whitley City, for appellee and cross-appellant Kingmont Oil Co.

John T. Pruitt, Somerset, for appellee South Kentucky Purchasing Co.

Before CLAYTON, REYNOLDS and WILHOIT, JJ.

WILHOIT, Judge.

This is an appeal and cross-appeal from a judgment of the McCreary Circuit Court setting the boundary line of property owned by Elmon King and leased to the appellee, Kingmont Oil Company, and awarding damages to the appellant for drilling encroachments by the appellee Kingmont Oil Company.

The appellant first argues that the trial court erred in establishing the boundary of the property owned by Elmon King because it relied upon the testimony of the appellee's surveyor rather than the appellant's surveyor who, according to the appellant, was an "obviously more experienced and qualified" surveyor. A fact finder may choose between the conflicting

opinions of surveyors so long as the opinion relied upon is not based upon erroneous assumptions or fails to take into account established factors. *See Gatliff v. White,* Ky., 424 S.W.2d 843 (1968). In the present case both surveyors acknowledged that the description in the original 1887 deed in Mr. King's chain of title provided insufficient information by itself from which a survey could be made of the property intended to be conveyed in that deed. Both surveyors in this case therefore necessarily relied upon other written instruments, including a 1907 survey, in arriving at their opinions. The appellee's surveyor also relied upon what appeared to be old boundary markings, and upon statements by the landowner concerning the location of the beginning points of the survey description.

The 1887 deed referred to "conditional" lines which the evidence indicated were lines which had been agreed to, and which were marked on the ground itself, but which had not been surveyed for a metes and bounds description. *See also Martin v. Hall,* 30 Ky.L.Rptr. 1110, 100 S.W. 343, 344 (1907). There was evidence from which it could be inferred that the 1907 survey was made to describe by metes and bounds the lines previously agreed upon, and that this survey, supplemented by the location of old boundary markings, showed the true intent of the parties to the 1887 deed as to the boundary line of the tract conveyed. Considering those factors relied upon by the appellee's surveyor as a whole, we are unable to say from the record that the surveyor based his survey on what were clearly shown to be erroneous assumptions, or that he failed to take into account clearly established factors. Accordingly, we decline to say that the trial court erred in accepting the survey or its location of the disputed boundary lines. It follows that if the 1887 deed was intended to convey fee simple title to the tract (as described in the 1907 survey, and as plotted by the appellee's surveyor), then any attempt in 1897 by the grantors in the 1887 deed to convey minerals lying under the tract was ineffective. *See Ratcliff's Guardian v. Ratcliff,* 242 Ky. 419, 46 S.W.2d 504, 505 (1932). Consequently, no claim to minerals underlying the 1887 grant may be made under the 1897 conveyance.

The appellant also maintains that testimony by Elmon King concerning what his great-uncle (the grantee in the 1887 deed) told him regarding the location of the boundary lines was inadmissible hearsay, as was the 1907 survey, which apparently had never been recorded. The appellant brought a motion in the trial court below "to strike all hearsay testimony of Elmon King," without specifying any particular testimony. The statements complained of fall within an exception to the hearsay rule concerning declarations of a landowner as to the location of boundaries, made while the declarant was the owner and in possession of the land, provided that evidence of such declarations does not run afoul of the "Dead Man's Statute," KRS 421.210(2). *See Kentucky River Coal Corp. v. Grigsby,* Ky., 263 S.W.2d 926, 927 (1954). In any event, the appellant failed to pursue the motion and did not obtain a ruling by the trial court. Any objection to the testimony is accordingly waived. *See Commonwealth, Department of Highways v. Parker,* Ky., 388 S.W.2d 366, 368 (1965); *Williams v. Williams,* Ky.App., 554 S.W.2d 880, 882 (1977).

We find no motion to strike evidence concerning the 1907 survey, but even if there had been there was no abuse of discretion in admitting the document into evidence. The survey falls within the "ancient documents" exception to the hearsay rule. *See generally* R. Lawson, *The Kentucky Evidence Law Handbook* § 8.85 at 289 (2nd ed. 1984). The document was found attached to an old deed delivered to Elmon King when he purchased his land, no alterations appear to have been made to the survey, and there was no evidence introduced which might cast doubt as to its authenticity. *See Elkhorn Coal Corp. v. Bradley,* 216 Ky. 599, 288 S.W. 326, 329 (1926). Moreover, the document appears to have been the basis of the description in the deed by which the grantee in the 1887 deed conveyed property to his daughter, a further indication of authenticity.

The appellant's final allegation of error concerns the propriety of the method used by the appellee's surveyor, and adopted by the trial court, to determine the extent to which the appellee's oil wells encroached upon the appellant's property. KRS 353.-610 provides that shallow oil wells which produce oil from the same pool must be spaced 660 feet from each other, and 330 feet from the "nearest boundary of the premises upon which the well is to be drilled...." The trial court's method of spacing the wells involved projection of a circle, with the oil well at the center and with a radius of 330 feet. The extent of encroachment was then computed by a determination of the ratio of the area of that portion of the circle overlapping the boundary line to the total area of the circle, with the ratio expressed as a percentage. The percentage of the ratio is equal to the percentage of encroachment.

The appellant contends that the generally accepted method for spacing oil wells involves projection of a *square*, with the oil well at the center and with a side of 660 feet. Computation of any encroachment would be the same, such that the ratio of the area of the overlapping portion of the square to the total area of the square, expressed as a percentage, would determine the percentage of encroachment. Use of a square rather than a circle results in a slightly higher percentage of encroachment. Both parties acknowledge that the statute and the pertinent administrative regulations are silent as to the method to be used in spacing shallow oil wells.

■ In our view, where there is no legal requirement that a particular method be used, any method is sufficient which satisfies the spacing requirements of the statute, and allows any encroachment to be determined under the circumstances with reasonable accuracy, according to accepted survey standards. Whether a particular method is acceptable under the circumstances must be determined on the basis of opinion testimony from a qualified expert. The decision as to qualification of a witness as an expert rests within the discretion of the trial court. *Kentucky Power Co. v.*

*Kilbourn,* Ky., 307 S.W.2d 9, 12 (1957). Where expert testimony is conflicting, the issue becomes a question to be determined by the finder of fact, in this case the trial court. *See id.* at 11. *See also Gatliff, supra,* at 844.

■ The trial court's adoption of the circle method in this case was based upon its acceptance of the expert testimony of David Wade, an engineer and licensed surveyor. After examining the record before us we conclude that Wade's testimony was sufficient to support an inference that use of the circle method adequately insured compliance with the spacing requirements of the statute; that such method, while admittedly more difficult in hilly or uneven terrain, could be used with reasonable accuracy; and that it had been used successfully in this case, such that an accurate determination of the extent of any encroachment could be properly determined. Moreover, Wade's opinion testimony was apparently unrefuted by any competent expert testimony in the record. Under the circumstances, we cannot say that the trial court's acceptance of Mr. Wade as an expert was an abuse of discretion, or that its acceptance of Wade's testimony and adoption of his method for measuring the percentage of encroachment in this case were clearly erroneous.

■ On cross-appeal, Kingmont first contends that the trial court was clearly erroneous in its determination of the percentage of encroachment by two of the cross-appellant's oil wells. The court properly determined that based upon the evidence, the percentages of encroachment by Beulah Phillips No. 1 and D.H. Campbell No. 3 were 4.09% and 3.45%, respectively. The court then erroneously rounded off these figures to 5% and 4%. Clearly, if the intent of the trial court was to round to the nearest whole percentage point the figures should have been rounded to 4% and 3%, respectively. However, inasmuch as the trial court determined the specific figures to two decimal places, we see no reason not to use the exact figures in computing the measure of damages in this case upon remand.

Kingmont next contends that the trial court erred in computing the amount of damages to be awarded. Specifically, Kingmont alleges that the court clearly erred in its determination that Beulah Phillips No. 1 produced an average of twelve barrels of crude oil per day, and in computing damages from the inception of the lease although the wells in question did not begin production until a later date.

Evidence adduced relative to the daily output of Beulah Phillips No. 1 was conflicting, and ranged from a low of 5.5 barrels per day to a high of approximately sixteen barrels per day. There was sufficient evidence from which to conclude that the production of the well never fell below twelve barrels per day, and we therefore cannot say that the trial court's finding on the issue was clearly erroneous. CR 52. However, we find that the trial court clearly erred in determining that both Beulah Phillips No. 1 and D.H. Campbell No. 3 had been in production since February 1983. The sole evidence available to the trial court was sufficient to show only that Beulah Phillips No. 1 produced oil from June 1983, and that D.H. Campbell No. 3 produced oil from October 1983. Since there was no evidence adduced concerning production prior to those dates, the trial court erred in computing damages from February 1983. *Cf. Plageman v. Board of Commissioners of the City of Covington*, Ky.App., 569 S.W.2d 191, 194 (1978). Upon remand, damages must be recomputed from the date each well went into actual production.

We turn finally to Kingmont's contention that the trial court abused its discretion in refusing to allow Kingmont to credit its costs of production against total damages. Damages were properly computed by multiplying the dollar value of the total production of each encroaching well by the percentage of encroachment. Where encroachment is willful, i.e., deliberate and knowing, a trespasser will be liable for the full value of the oil extracted. *See Swiss Oil Corp. v. Hupp*, 253 Ky. 552, 69 S.W.2d 1037, 1039 (1934). Where encroachment is innocent, and placement of the encroaching wells is found to have been made in good faith, damages may be reduced by the proportionate costs of producing the oil. *Id.* However, the burden of proving innocence falls upon the trespasser, in this case Kingmont. *Id.* 69 S.W.2d at 1041.

Kingmont attempted to introduce evidence of its costs of production at trial, but the trial court refused to admit the evidence, apparently because Kingmont was unable to introduce any evidence as to its innocence as a trespasser. A careful review of the transcript of the evidence indicates that Kingmont did attempt to introduce evidence, in the form of testimony from Kingmont's driller, as to the intent of the company in placing the wells. Since this evidence was readily available, and since it was clearly admissible for the purpose of showing whether Kingmont's trespass was willful or innocent, the trial court's refusal to hear the testimony was an abuse of discretion.

Upon remand, therefore, Kingmont should be given the opportunity first, to prove that its encroachment was innocent and in good faith (*see Swiss Oil Corp.*, 69 S.W.2d at 1041–42); and second, to introduce evidence of its bona fide costs of producing oil from the encroaching wells over the total periods in question. If the trial court finds that Kingmont's trespass was innocent, Kingmont should be allowed to deduct its proportionate costs of operation and production reasonably expended, i.e., its production costs for each well multiplied by the appropriate percentage of encroachment. "Production costs" are those expenses *"reasonably calculated* to be beneficial and productive" in the operation and development of the wells. *Joyce v. Zachary*, Ky., 434 S.W.2d 659, 661 (1968) (emphasis in original). Such costs may be allowed or disallowed by the trial court according to principles of fairness and equity under the circumstances. *Id.*

The judgment of the McCreary Circuit Court is affirmed as to its location of the boundary lines, its method of determining encroachment, and its findings concerning the output of the encroaching wells. The judgment is reversed as to the trial court's

method of rounding percentages of encroachment; its computation of the period of encroachment; and its refusal to allow Kingmont to introduce evidence relevant to Kingmont's innocence as a trespasser and Kingmont's reasonable costs of production, and this matter is remanded for further proceedings.

All concur.