RENDERED:  MAY 20, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1013-MR
AND
NO. 2020-CA-1085-MR


STEVEN NOE                                   APPELLANT/CROSS-APPELLEE


APPEAL AND CROSS-APPEAL FROM ESTILL CIRCUIT COURT
v.                    HONORABLE MICHAEL DEAN, JUDGE
ACTION NOS. 11-CI-00286, 13-CI-00001, AND 13-CI-00045


ROBERT MCINTOSH; CATIE
MCINTOSH; AND CAYLA
MCINTOSH                              APPELLEES/CROSS-APPELLANTS


OPINION
AFFIRMING IN PART, VACATING IN PART, AND REMANDING
APPEAL NO. 2020-CA-1013-MR AND REVERSING
AND REMANDING CROSS-APPEAL NO. 2020-CA-1085-MR

** ** ** ** **

BEFORE:  CALDWELL, MᶜNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Steven Noe brings Appeal No. 2020-CA-1013-MR and

Robert McIntosh, Cayla McIntosh, and Catie McIntosh bring Cross-Appeal No.

2020-CA-1085-MR from a July 22, 2020, Order and Amended Final Judgment of

the Estill Circuit Court rendering judgment in favor of the McIntoshes and against Noe for trespass to timber and dismissing Noe's claims to quiet title and establish a boundary line for failure to name indispensable parties.[1] We affirm in part, vacate in part, and remand Appeal No. 2020-CA-1013-MR and reverse and remand Cross-Appeal No. 2020-CA-1085-MR.

BACKGROUND

On October 11, 2011, Robert McIntosh filed a complaint against Steven Noe in the Estill Circuit Court alleging, *inter alia*, a timber trespass pursuant to Kentucky Revised Statutes (KRS) 364.130. The timber was taken from an area known as Tipton Ridge in Estill County, Kentucky. In July of 2011, Noe had contracted with Harold Estes to log the Noe property. Estes logged the subject property in early August, 2011.

In his complaint, McIntosh sought treble damages for the wrongful cutting of timber on his property but did not seek to establish the boundary line between the Noe and McIntosh properties. In a "Response to Verified Complaint," Noe maintained that McIntosh no longer held any legal interest in the real property at issue. Noe pointed out that McIntosh and his previous wife, Cynthia McIntosh, had deeded the subject property to their minor children, Catie McIntosh and Cayla

---

[1] The July 22, 2020, Order and Amended Final Judgment also set aside the original Final Judgment that had been entered on February 14, 2020.

-2-

McIntosh, by deed dated June 4, 1999.[2]  Noe also filed a motion to dismiss McIntosh's complaint based upon McIntosh's lack of legal interest in the property.

Thereafter, by deed dated November 2, 2011, McIntosh's daughters, Catie and Cayla who were by then adults, deeded a life estate in the subject real property to McIntosh and retained the remainder interest.  On November 10, 2011, an amended complaint was filed by McIntosh, Catie, and Cayla (collectively referred to as the McIntoshes) as plaintiffs.  Noe filed an amended answer and counterclaim seeking, *inter alia*, a declaratory judgment to establish the boundary line between the parties' property and to quiet title.

On January 8, 2013, Charles Terry[3] filed an action (Action No. 13-CI-00001) against McIntosh seeking to quiet title, to establish the boundary line between the parties, and to restrain McIntosh from blocking a roadway Terry utilized to access his property.  Terry was the owner of real property that was partly located between the McIntoshes' property and the Noe property.  On February 27, 2013, McIntosh, *pro se*, filed a complaint against Terry (Action No.

---

[2] The June 4, 1999, deed conveyed the subject property from Steven and Cynthia McIntosh to their minor children Catie McIntosh and Cayla McIntosh.  As the conveyance was made pursuant to the Kentucky Uniform Transfer to Minors Act, the transferors obligation expired upon the minor children reaching the age of majority.  When this action was commenced both Catie and Cayla had reached the age of majority.

[3] Charles Terry died on April 7, 2019, before the bench trial in this case was conducted.  Additionally, no motion to substitute a personal representative of Terry's estate was filed, and no order was entered substituting a personal representative.  His case was effectively dismissed and otherwise not adjudicated.  Terry's case is not relevant to this appeal.

13-CI-00045) alleging that "a controversy exists over [Terry's] property and roadway and division line between the parties' property." February 27, 2013, Complaint at 1. Terry filed an answer and counterclaim seeking, *inter alia*, to quiet title in the property. By docket order entered February 12, 2016, Action Nos. 13-CI-00001 and 13-CI-00045 were consolidated with Action No. 11-CI-00286.

There was little activity of record over the next couple of years. Then, on August 7, 2018, the McIntoshes filed a motion *in limine* to prevent Noe from arguing that any fault related to the timber trespass could be apportioned to Harold Estes, a nonparty. As noted, Estes was the logger Noe had contracted with to cut and remove timber from the subject property. Noe subsequently moved to dismiss Action No. 11-CI-00286 on the basis that Estes was an indispensable party to the litigation. By order entered August 10, 2018, the circuit court denied Noe's motion to dismiss the action and ordered that Estes be joined as a party defendant. Noe eventually asserted a claim against Estes for contribution, indemnity, and apportionment of any damages. By docket order entered February 7, 2019, Estes was dismissed from the action based on statute of limitations grounds.

A bench trial was conducted on November 8, 2019, and by Order and Amended Final Judgment entered July 22, 2020, the court made the following findings of fact, conclusions of law, and judgment:

-4-

## II.  FINDINGS OF FACT

Robert McIntosh holds a life estate in the property described in DB 288, P 300, recorded in the Estill County Clerk's Office.  His daughters, Cayla and Catie, hold the remainder interest.  The Defendant Steve Noe owns a life estate in an adjoining property which shares a common boundary with the McIntosh property below the cliff.  Noe's daughters[,] Letisha and Stephanie[,] own the remainder interest.  The McIntoshes and the Noes do not share a common boundary line above the cliff where the trespass occurred.  The Court finds that of the 11 acres logged above the [c]liff as determined by Surveyor Oliver, 8 acres belonged to the McIntoshes.

The Court finds that 350 trees were cut on the 11 acres above the cliff, and that the value of this timber on the stump was $17,770.80.  Because the McIntoshes owned 8 of the 11 acres logged, 8/11th of the value on the stump is attributed to the McIntoshes, for a timber value on the stump of $12,924.22.  Based on the testimony of the McIntosh's [sic] forester, [Gavin Wilson] the Court finds the cost to reclaim the property is $20,000, which would have included among other things, removing the remaining timber to allow for uniform regrowth.  Adjusting this amount to the ratio (8/11th), gives $14,545.45 in reclamation costs on the McIntosh land.

## III.  MEASURE OF DAMAGES

. . . .

No experts were called by Steve Noe to rebut the McIntosh's [sic] timber expert, but Defendant Steve Noe did disagree with the amount of timber that the Plaintiffs and their experts determined to be cut on the McIntosh land.  Nor did Steve Noe call a land surveyor to rebut the testimony of Michael Oliver.  However, Steve Noe testified that he gave [Harold] Estes a survey and his

deed. The fact that the Defendant Noe commissioned a survey indicates at least a good intention of respecting adjoining property lines. *Penix* [*v. Delong*, 473 S.W.3d 609 (Ky. 2015)]. The Court is unable to find that Defendant Noe acted with the intent to convert the Plaintiffs' timber, thus under the statute, the Plaintiffs are not entitled to treble damages, but are entitled to recover the reasonable value of the timber, actual damages to their property, and any legal costs incurred by the Plaintiffs.

## IV. APPORTIONMENT OF FAULT

. . . .

Considering the nature of the conduct of Harold Estes, the logger, and that of Defendant Steve Noe, who contracted with him, as well as the extent of the causal relationship between the conduct and the damages claimed, the Court finds from a preponderance of the evidence that the McIntosh's [sic] would be entitled to recover $12,924.22 stumpage value of the timber, plus $14,545.45 damages to the land, for a total of $27,469.67 in actual damages if contributory fault is disregarded. The Court further finds that 75% of the total fault is allocated to logger Harold Estes, and 25% is allocated to Defendant Steve Noe, who contracted to have the timber cut.

## V. CHARLES TERRY CLAIMS AND DEFENSES

No proof as to the boundary line of Dr. Charles Terry having been presented, other than what is shown on the Oliver Plat, and no personal representative having ever been substituted for Charles Terry's Estate, the Court finds that it does not have jurisdiction to grant relief for or against the Terry Estate. *E.g.*, *Hardin County v. Wilkerson*, 255 S.W.3d 923 (Ky. 2008).

## VI.  DECLARATION OF RIGHTS

Defendant Steve Noe sought a declaration of rights as to the boundary line between the parties.  Michael Oliver, the only expert land surveyor who testified, established the common boundary line as being that shown on his survey plat, Exhibit 2 to Oliver's testimony.  The preliminary version of this Plat was authenticated and introduced.  In this Court's original Judgment in this case, it found that the common boundary line between the McIntoshes and the Noes was as shown by the Survey Plat of Oliver.  However, it was determined that Steve Noe only owned a life estate in the tract which adjoins the McIntosh tract, and that the remainder interest was owned by his two daughters, Letisha and Stephanie, who were never joined as parties to this litigation.  Despite filing an action seeking a declaration of rights without joining his two daughters, Noe now argues they were indispensable parties and a judgment in their absence is invalid.  Regardless, in as much as Noe's daughters own the remainder interest in the subject property, the Court believes them to be indispensable parties as to the declaration of rights claim, which seeks to establish the boundary line between the parties and which directly affects their remainder interest.  Because they were not joined in this action, the claim for declaration of rights as to the boundary line between the parties must be dismissed.  *See Gilland v. Dougherty*, 500 S.W.3d 217 (Ky. App. 2016).  While the failure to join Noe's daughter[s] requires dismissal of the declaration of rights claim, they are not necessary parties to the timber trespass claim against Steve Noe, since no allegations of trespass were made against them.

## JUDGMENT

The original Judgment entered in this case on February 14th, 2020[,] is set aside and replaced by this Judgment.

> The Declaration of rights claim seeking to quiet title and establish the boundary line between the McIntoshes, Steve Noe, and Charles Terry [is] dismissed for failure to join indispensable parties.
>
> Judgment is entered in favor of the McIntosh Plaintiffs against Defendant Steve Noe for trespass to timber and the McIntoshes are awarded judgment in the amount of $6,867.41 in damages against Steve Noe, being 25% of the total damages, plus post judgment interest at the legal rate from the date of the original judgment, and court costs incurred.

July 22, 2020, Order and Amended Final Judgment at 5-9. These appeals follow.

<u>APPEAL NO. 2020-CA-1013-MR</u>

Noe initially contends that the circuit court erred in its determination of the location of the boundary lines between the McIntoshes, Noe, and Terry. More particularly, Noe asserts that the testimony of the McIntoshes' land surveyor, Mike Oliver, should have been excluded. In support thereof, Noe asserts the following: (1) Oliver's plat was marked as a "preliminary" and a final plat was not produced until the day of trial, (2) Oliver was unable to testify to exactly where the timber had been cut; and, (3) Oliver "guessed" as to the total number of acres that were timbered.[4]

---

[4] Other reasons asserted by Steven Noe to exclude Michael Oliver's testimony included that Oliver was owed money by Robert McIntosh for his work and that given the plat was not final, it violated various Kentucky Administrative Regulations regarding land surveying.

-8-

Oliver was retained by McIntosh in late 2011 to survey the McIntoshes' property located on Tipton Ridge in Estill County, Kentucky. Oliver, who had over 30 years' surveying experience, surveyed the property and prepared a plat which he marked as "preliminary." Oliver testified that initially marking a survey as "preliminary" was his standard practice if there was a disagreement between the parties. Oliver stated that he did this to prevent either party from recording the plat in hopes that the parties could reach an agreement. Oliver further testified at trial that he would not make any changes to the plat, would remove the word "preliminary," and would sign the plat as final.

In response to Oliver, Noe introduced a recorded survey plat of the property prepared by Jay Webb. However, Webb was not called as a witness at trial. The Webb recorded plat was not referred to on Oliver's plat. The circuit court relied on Oliver's plat and testimony in its opinion.[5]

It is well-established that weight and credibility of a witness's testimony is a question of fact for the finder of fact. *See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). It is also clear that Oliver's testimony concerning the plat goes to the weight and credibility that should be given to Oliver's testimony.

---

[5] As an appellate court, we are cognizant that a trial court, as a fact-finder, may choose between "conflicting opinions of surveyors so long as the opinion relied upon is not based upon erroneous assumptions" or the opinion does not ignore established factors. *Webb v. Compton*, 98 S.W.3d 513, 517 (Ky. App. 2002) (quoting *Howard v. Kingmont Oil Co.*, 729 S.W.2d 183, 184-85 (Ky. App. 1987)). Noe does not raise any arguments on appeal in this regard.

*See id.* Noe's assertions of error do not provide a basis for exclusion of Oliver's testimony. As such, we do not believe the circuit court erred by admitting Oliver's testimony regarding the plat he prepared.

Regarding Noe's contention that Oliver's testimony should have been excluded due to his inability to identify upon whose property the timber was cut, we also find no error. Oliver testified that he was hired to locate and mark the property boundary line, which he did. Oliver further testified that after he identified the property boundary line, it was the task of a timber expert to establish where the cut trees were located. Again, these issues go to weight and credibility of Oliver's testimony and not to its admission. *See id.*

And, as to Noe's contention that it was erroneous to admit Oliver's testimony concerning the amount of acreage timbered, we likewise find no error. Upon direct examination, Oliver stated he was not a timber expert and did not offer an opinion as to the amount of acreage timbered. However, upon cross-examination, Noe's counsel led Oliver to believe that he had previously testified in a deposition that three to five acres had been cut from the McIntoshes' property. But, the record is clear that Oliver's deposition had never been taken by any party. In response to a question by Noe's counsel, Oliver testified he believed 16 acres on top of the cliff belonged to the McIntoshes and six acres on top of the cliff belonged to Terry. More specifically, Oliver testified:

I believe there's 16 acres up on top of the cliff that belong to Mr. McIntosh and there's about six acres that belong to Dr. Terry. That's the area between cliff to cliff and the property lines. Whether the entire area was cut or not and, if I did in my deposition say 6 acres, then I'm going to guess half of that [inaudible] but that would just be a guess. I did not measure.

Video Record at 10:49:48.

The Kentucky Supreme Court has held that "opening the door to otherwise inadmissible evidence is a form of waiver that happens when one party's use of inadmissible evidence justifies the opposing party's rebuttal of that evidence with equally inadmissible proof." *Graham v. Commonwealth*, 571 S.W.3d 575, 582 (Ky. 2019) (internal quotation marks and citation omitted). And, a trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *B.B. v. Commonwealth, Cabinet for Health and Family Servs.*, 635 S.W.3d 802, 807 (Ky. 2021) (citing *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 576 (Ky. 2000)). An abuse of discretion occurs where the trial court's decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *B.B.*, 635 S.W.3d at 807 (quoting *Commonwealth v. Padgett*, 563 S.W.3d 639, 645 (Ky. 2018)). As Noe opened the door to this line of questioning upon cross-examination, we find no abuse of discretion in the admission of Oliver's testimony.

Noe next asserts that the circuit court erred by admitting or by giving too much weight to the testimony of the timber expert, Gavin Wilson. Noe states

-11-

that Wilson's testimony "was not based on sufficient facts or data, and its admission would violate KRE [Kentucky Rules of Evidence] 702." Noe's Brief at 17. Noe does not, however, lend much support for such assertion.

Wilson is a forester with thirty years' experience, and he was retained by McIntosh as a timber expert to give an opinion regarding the amount and value of timber cut from the McIntosh property. Wilson went to Tipton Ridge in March of 2012, several months after Oliver had conducted his survey in late 2011. Wilson testified that he found stumps of 350 cut trees in the area. Wilson stated that he had physically numbered the cut trees with spray paint, identified the type and size of each cut tree, and assigned a value based upon market price. Wilson estimated that the cut timber had a total value of $17,770.80. Wilson also estimated that damage remediation cost for the land would be $20,000. Wilson testified that he could not say where the cut trees he observed were located in relation to the parties' boundary lines. Wilson acknowledged that he had not seen a survey of the property and also stated that he did not observe any boundary markers or stakes upon the property when he was there. Rather, Wilson based his opinion upon McIntosh's representations regarding where the boundary lines were located. Again, the issue raised by Noe regarding the admission of Wilson's testimony goes to the weight and credibility of Wilson's testimony and not the

admission or exclusion of same. *See Moore*, 110 S.W.3d at 354. As such, we do not believe the circuit court erred in its admission of Wilson's testimony.

Noe next contends that the circuit court erred when it determined the amount of damages that resulted from the timber trespass. More particularly, Noe contends there is a complete absence of proof in the record regarding the actual location of the timber cut in relation to the boundary lines of the parties' property.

In its July 22, 2020, Order and Amended Final Judgment, the circuit court found that 11 acres had been logged and 350 trees were cut. The court additionally believed the total value of the cut timber was $17,770.80. The circuit court found that "the McIntoshes owned 8 of the 11 acres logged, 8/11th of the value on the stump is attributed to the McIntoshes, for a timber value on the stump of $12,924.22." July 22, 2020, Order and Amended Final Judgment at 5-6.

At the hearing, Oliver testified that there were approximately 22 acres above the cliff and of the 22 acres, 16 acres were owned by the McIntoshes and 6 acres were owned by Terry. Oliver also testified that half of the 22 acres had been logged – 11 acres. Additionally, Wilson determined that 350 trees had been cut in the disputed area. So, the court's findings that 11 acres had been logged and that 350 trees had been cut was supported by substantial evidence of a probative value. However, the circuit court's finding that the McIntoshes owned 8 of the 11 acres logged is without any evidentiary support. Rather, it appears that the circuit court

-13-

merely estimated that of the 11 acres logged above the cliff, 8 acres were owned by the McIntoshes. The court arrived at this estimation by taking the total number of acres owned by the McIntoshes above the cliff (16 acres) and the total number of acres of real property above the cliff (22 acres) to arrive at a percentage of acres owned by the McIntoshes (16/22 or 73 percent). The court then extrapolated this percentage (73 percent or 16/22) to arrive at the estimation that 8 of the 11 acres logged were owned by the McIntoshes.

As there was no evidence to support the circuit court's finding that the McIntoshes owned 8 of the 11 acres actually logged, we are compelled to conclude that this finding of fact was clearly erroneous. The circuit court based its award of damages to the McIntoshes upon its erroneous finding of fact that they owned 8 of the 11 acres logged. Again, we can find no evidence in the record to support this finding. We thus vacate the circuit court's award of $6,867.41 to the McIntoshes against Noe and remand for the circuit court to reconsider its award of damages to the McIntoshes.

Noe also maintains that "[t]he McIntoshes failed to mitigate their damages." Estes testified that he left four or five loads of logs that he had cut on the ground after he left the McIntoshes' property. Noe identified the actions he believed that McIntosh failed to take in order to mitigate damages, but he did not make any specific allegation of error as to the circuit court's ruling in this regard.

-14-

Rather, as to the circuit court's purported error, Noe makes only a one sentence assertion in his brief that the court's "failure to consider the duty to mitigate is a clearly erroneous application of the law. . . ." Noe's Brief at 24. Additionally, Noe does not direct this Court to the record as to where this error was raised or how it was preserved at trial for our review. Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(v). If the error was not raised before the court at trial, it is not preserved for review. *Sneed v. Univ. of Louisville Hosp.*, 600 S.W.3d 221, 228 (Ky. 2020). And, KRS 364.130, which sets out statutory damages for a timber trespass, does not provide for a mitigation offset except as provided in Section (2), which is not relevant to this case.[6] Accordingly, we decline to address this contention of error.

Noe finally asserts that the McIntoshes' claims for timber trespass should have been barred by champerty. More particuylary, Noe maintains that McIntosh had previously deeded the property to his daughters to avoid his judgment creditors. However, Noe fails to recognize that a life estate in the property was eventually deeded to McIntosh and then an amended complaint was filed by McIntosh and his daughters.

---

[6] This Court can find no authority that requires the mitigation of damages in a timber trespass case, nor can this Court fathom that a landowner would owe a duty to mitigate his damages for timber cut on his land by a trespasser.

-15-

The doctrine of champerty is set forth in KRS 372.070(1), which

provides:

> Any sale or conveyance, including those made under execution, of any land, or the pretended right or title thereto, of which any other person has adverse possession at the time of the sale or conveyance, is void; but this section does not render void any devise of land in adverse possession.

Pursuant to KRS 372.070(1), the doctrine of champerty is utilized as a

defense by an adverse possessor of land when there has been a sale from one

unrelated party to another. *Coblentz v. Day*, 540 S.W.3d 384, 387 (Ky. App.

2018). In the case *sub judice*, there was not a claim of adverse possession as to any

of the parcels of land involved. And, the owners of the property were all plaintiffs

in the amended complaint. Therefore, we believe Noe's contention of error

regarding champerty was without merit.

CROSS-APPEAL NO. 2020-CA-1085-MR

The McIntoshes assert on cross-appeal that the circuit court erred by

joining Estes as an indispensable party, and then, despite Estes' dismissal before

trial, subsequently erred by apportioning fault to Estes for McIntoshes' damages.

On August 8, 2018, Noe moved to dismiss the action for failure to

join Estes as an indispensable party. The court determined Estes was an

indispensable party and ordered that he be joined as a party to the action. Noe

subsequently asserted claims against Estes for contribution, indemnity, and

-16-

apportionment.  The McIntoshes did not pursue any claims against Estes but did file a motion, *in limine*, to prevent any apportionment of fault to Estes.  The court denied the McIntoshes' motion.  Estes was subsequently dismissed as a party prior to trial based upon statute of limitations grounds.  However, by Final Judgment entered July 22, 2020, the circuit court apportioned 75 percent of the fault in the timber trespass to Estes and 25 percent to Noe.

It is well-established that an indispensable party is "one whose interest would be divested by an adverse judgment." *Liquor Outlet, LLC v. Alcoholic Beverage Control Bd.*, 141 S.W.3d 378, 387 (Ky. App. 2004).

In the case *sub judice*, Estes did not have an interest that would be divested by a judgment in this case.  The action did not adjudicate any interest as to Estes.  The plaintiffs in the underlying action, the McIntoshes, chose to pursue a trespass action against only Noe.  And, the McIntoshes chose not to pursue a trespass claim or any other claim against Estes.  There are myriad reasons why the McIntoshes may have chosen not to pursue a claim against Estes but the decision to do so was their choice.

If, on the other hand, Noe believed that Estes was wholly or partially at fault, the proper procedure would have been for Noe to pursue a third party complaint against Estes under CR 14.01.[7]  For reasons unknown, Noe failed to do

---

[7] CR 14.01 provides, in relevant part:

so after the amended complaint was filed.  And, we must be cognizant of the fact that Noe employed Estes to cut the timber, not McIntosh, for which Noe must bear responsibility.  Estes is a nonsettling nonparty and we believe the law is clear that the failure of a party to assert any claim they have against another constitutes a waiver of their ability to apportion fault.  *Baker v. Webb*, 883 S.W.2d 898, 899 (Ky. App. 1994).

In this instance, Estes should not have been joined as an indispensable party to the lawsuit.  Rather, the proper course of action would have been for Noe to have filed a third party complaint against Estes under CR 14.01.  Noe's failure to do so precludes any apportionment of fault to Estes.  *Id.*  In sum, we believe that

> A defendant may move for leave as a third-party plaintiff to assert a claim against a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.  If the motion is granted, summons and a copy of the third-party complaint, with a copy of the original complaint attached as an exhibit, shall be served on such a person, who shall be called the third-party defendant. . . .  The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim.  The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff.  The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert his defenses as provided in Rule 12 and his counterclaims and cross-claims as provided in Rule 13.  A third-party defendant may proceed under this rule against any person not a party to the action who is or may be liable to him for all or part of the claim made in the action against the third-party defendant.

the circuit court erroneously apportioned fault to Estes and reverse that portion of the circuit court's judgment so doing.

CONCLUSION

For the foregoing reasons, in Appeal No. 2020-CA-1013-MR we vacate the circuit court's damage award of $6,867.41 to McIntosh and remand to the circuit court for proceedings consistent with this Opinion. And, in Cross-Appeal No. 2020-CA-1085-MR we reverse the circuit court's allocation of fault to Estes and also remand for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEF AND ORAL ARGUMENT
FOR APPELLANT/CROSS-
APPELLEE:

Rodney G. Davis
Richmond, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEES/CROSS-
APPELLANTS:

Brooks Stumbo
Richmond, Kentucky